In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00059-CV


______________________________




EL PASO NATURAL GAS COMPANY, Appellant



V.



CAROLE KEETON STRAYHORN, COMPTROLLER OF PUBLIC 

ACCOUNTS OF THE STATE OF TEXAS, AND GREG ABBOTT, 

ATTORNEY GENERAL OF THE STATE OF TEXAS, Appellees




 


On Appeal from the 250th Judicial District Court


 Travis County, Texas


Trial Court No. GN301003




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 El Paso Natural Gas Company (the Company) and the Texas Comptroller of Public Accounts
battle over the Company's franchise tax liability for the years 1989 through 1991, in a protracted
conflict with possibly millions of dollars at stake. The battlefield is littered with accounting and
procedural details and is mined with obscure and often unclear statutes and agency rules.

 The Company and the Comptroller filed competing motions for summary judgment in the
trial court. Both sides partially won and partially lost in those summary judgment proceedings. Both
appeal, (1) raising challenges to the summary judgments on three issues:

1. Should the Company be allowed to change its accounting method from the "full cost"
method to the "successful efforts" method in its 1989 and 1990 franchise tax reports? 
The trial court's summary judgment allowed the change, and the Comptroller appeals.


2. Should the Company be entitled to remove from its 1989 and 1990 taxable capital
(a) revenues garnered from interstate gas transportation and (b) amounts attributable to
unamortized losses on reacquired debts? The trial court's summary judgment disallowed
the removal, and the Company appeals.


3. Should the Company be entitled to remove from its 1991 taxable capital (a) revenues
garnered from interstate gas transportation, (b) amounts attributable to unamortized
losses on reacquired debts, and (c) monetary values erroneously included from the
Company's account number 228-4000, which had a zero balance? The trial court's
summary judgment disallowed the removal, and the Company appeals. We reverse and remand on issues one and three, and affirm on issue two.

 The propriety of a traditional summary judgment is a question of law to be reviewed de novo
on appeal. Robinson v. Tex. Timberjack, Inc., 175 S.W.3d 528, 530 (Tex. App.--Texarkana 2005,
no pet.). When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). Summary judgment is proper when the movant
establishes that there is no genuine issue of material fact and that he or she is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671 (Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex. App.--Texarkana
1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact
issue with reference to the essential elements of the plaintiff's cause of action, but whether the
summary judgment proof establishes the movant is entitled to judgment as a matter of law. Gonzalez
v. Mission Am. Ins. Co., 795 S.W.2d 734, 736 (Tex. 1990). Because the movant bears the burden
of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken
as true, and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant. 
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985). 

(1) The Company Was Not Entitled to Summary Judgment Allowing It to Change to the
"Successful Efforts" Accounting Method for 1989 and 1990

 In the trial court, the Company argued it was entitled, as a matter of law, to amend its 1989
and 1990 franchise tax reports to reflect a change in its accounting methodology from "full cost" to
"successful efforts." (2) If allowed, this change would result in a large tax refund from the State to the
Company. The Comptroller countered that the Company's claims premised on a change of
accounting method were, as a matter of law, time barred. 

 A little background is in order. In August 1978, the Securities and Exchange Commission
(SEC) began allowing certain petroleum companies to use either the "full cost" or the "successful
efforts" accounting method in filing the reports with the SEC. The Financial Accounting Standards
Board (FASB) had previously sought to limit petroleum companies to the "successful efforts"
method. After the SEC began allowing the use of "full cost" accounting for certain petroleum
companies, however, the FASB relented in its efforts to limit businesses to a single accounting
method.

 The Texas Legislature followed suit in the late 1980s and amended the Texas Tax Code to
allow petroleum producers and manufacturers specifically to use either the "full cost" or the
"successful efforts" accounting methods. See Tex. Tax Code Ann. § 171.109(g). (3) Likewise, in
February 1991, the Comptroller changed its policy in order to permit use of either method. 
Moreover, the Comptroller gave taxpayers an extraordinary opportunity: petroleum producers would
be permitted to amend their 1988, 1989, and 1990 franchise tax returns to reflect a change from the
"full cost" accounting method to the "successful efforts" method, thereby allowing these companies
to take advantage of the 1989 statutory change--which had occurred after the deadline by which
companies previously had to file their methodology election. (4) There was, however, one catch: the
businesses had to file their 1988, 1989, and 1990 amended returns by February 28, 1991. (5) But if a
business filed a "protective claim" letter by that same date (6) and later supplemented the protective
claim letter with the business' amended returns at any time within the following six months, that
would satisfy the Comptroller's requirements to effect any desired retroactive accounting change. 
In real terms, the petroleum companies were given approximately fourteen days in which to file their
"protective claim" letters.

 On February 28, 1991, officials from the Comptroller's office talked with the Company about
the latter amending its franchise tax returns. The summary judgment evidence suggests that, in
response to that conversation, the Company, on February 28, 1991, sent the required protective claim
letter to the Comptroller. The record before us, however, viewed in the light most favorable to the
Comptroller, does not show that the Comptroller ever received this letter. William Hamner,
Assistant Director of Tax Administration, testified in his affidavit that he had performed a search of
the Comptroller's records and found no evidence that the Comptroller had ever received the
Company's protective claim letter. See Tex. R. Evid. 801(1) (absence of public record or entry). 
Janet Spies, another employee of the Comptroller, testified similarly. The Company admitted it has
no evidence showing the Comptroller received the protective claim letter. The Company admitted
it had no documents responsive to the Comptroller's request for production of documents showing
the Comptroller received the protective claim letter. Thus, while a change in law and policy would
have permitted the Company to amend its 1989 and 1990 franchise tax returns--thereby converting
to the "successful efforts" accounting method--and while there is evidence the Company timely
mailed its "protective claim" letter, there also exists evidence that the Comptroller did not receive
that letter.

 The trial court granted partial summary judgment in the Company's favor, holding that "the
Company's claims in Hearing Number 37,477 are not barred by limitations." Logically, this holding
rests on implicit findings that the Company timely filed, and the Comptroller subsequently received,
the Company's protective claim letter. But viewing the evidence in the light most favorable to the
nonmovant on this issue--the Comptroller--the record before us does not conclusively prove that
the letter was received by the Comptroller.

 As an alternative argument on this issue, the Company contends the Comptroller's change
to rule 3.391--affording companies an opportunity to amend their franchise tax reports retroactively,
but also setting the arbitrary deadline of February 28, 1991--is illegal and unenforceable because
it conflicts with state law that provides companies a four-year statute of limitations in which to
amend their returns. This argument was presented by the Company to this Court at oral argument,
but the Company did not raise this argument in its briefing to this Court.

 Oral argument should be limited to the issues and arguments raised in the written briefing. 
Tex. R. App. P. 39.2. Texas appellate courts, including this one, spend a significant amount of
additional time preparing for oral argument cases. Attorneys who request argument should arrive
at oral argument ready to answer questions about both the facts and the law of the case. See id. 
Advocates should have also first filed cogent briefs. See Tex. R. App. P. 38.1(h), 38.2(1). Counsel
should not waylay opponents at oral argument by raising new issues or alternative arguments not first
presented in their briefs. See Tex. R. App. P. 39.2. Parties ignore these rules at their own peril. (7)

 Assuming arguendo that the Company is correct regarding the Comptroller's lack of authority
to set an arbitrary February 29 deadline, the Company still loses on this argument. The thrust of the
Company's argument is the Comptroller may make rules changes only when they do not conflict with
state law. But extending the Company's argument to its natural conclusion would lead to the
corollary result that the Comptroller's rule allowing retroactive accounting changes also conflicts
with  state  law,  namely  Section  171.109(e)  of  the  Texas  Tax  Code.  See  Tex.  Tax  Code
Ann. § 171.109(e) (prohibiting changes in accounting methodology solely because it results in 
reduction of tax liability). Moreover, eliminating the February 28 deadline does not also eliminate
the Comptroller's rules that otherwise prohibit retroactive accounting changes. Accordingly, the
Company still does not prevail under this new alternative argument.

 Based on our review of the record, we hold that a fact issue exists whether the Company
timely filed its protective claim letter. Therefore, we must reverse the trial court's holding that, as
a matter of law, the Company was entitled to amend its 1989 and 1990 tax reports to reflect a change
to the "successful efforts" accounting method. At trial, the Company may ultimately persuade the
fact-finder on this issue, but its summary judgment on this issue fails.

(2) The Comptroller Was Entitled to Summary Judgment Barring the Company's Claims for
Deductions  in  1989  and  1990  of  (a)  Revenues  from  Interstate  Gas  Transportation and
(b) Amounts Attributable to Unamortized Losses on Reacquired Debts

 The Company next claims it is entitled to deduct, on its 1989 and 1990 returns, (a) revenues
from interstate gas transportation and (b) amounts attributable to unamortized losses on reacquired
debts. (8) The Comptroller argues that these claims are barred by limitations, as well as by the finality
of certain administrative proceedings and the failure of the Company to exhaust its administrative
remedies. The trial court granted the Comptroller a summary judgment barring these claims, a ruling
the Company now contends is erroneous. We agree that, because these claims are barred by
limitations as a matter of law, the summary judgment on these issues was proper. We do not reach
the questions of finality and exhaustion of remedies.

 The following procedural time line will provide needed context to understand the limitations
issue:

Date Action or Event


February 28, 1991 The Company allegedly mails a general protective claim letter for years
1988-90 regarding its desire to change to the "successful efforts" method of
accounting. 


September 28, 1994 The Company files its original petition in administrative proceeding number
34,943 on issues other than those involved in this appeal.


December 2, 1997 The Company and the Comptroller file a joint motion to dismiss
administrative proceeding number 34,943. 


January 12, 1998 The administrative judge formally dismisses administrative proceeding
number 34,943; the parties file a joint waiver of their right to file a motion for
rehearing.


January 28, 1998 The Company files its original petition in administrative proceeding number
37,477.


March 1998 The Comptroller files a "position letter" in administrative proceeding number
37,477.


July 16, 1998 This was the Company's final, extended deadline to file its response to the
Comptroller's position letter in administrative proceeding number 37,477 and,
thus, the deadline to amend, as a matter of right, to add issues to
administrative proceeding number 37,477.


April 2, 2001 The Company seeks permission to "reopen the administrative record" and
amend its original petition in administrative proceeding number 37,477 to
add the instant issues.


February 5, 2002 The administrative law judge denies the Company's request for permission
to amend the original petition in administrative proceeding number 37,477.


September 13, 2002 The Company files its original petition in administrative proceeding
number 43,135 asserting the instant issues.


March 28, 2003 The Company files its taxpayer lawsuit in the Travis County District Court.


January 6, 2004 The administrative law judge dismisses administrative proceeding number
43,135.


February 13, 2004 The Company amends its petition in the taxpayer lawsuit filed in district
court.


February 24, 2005 The Travis County District Court partially grants and partially denies the
parties' competing motions for summary judgment.

 The Comptroller argues these claims are barred by limitations based on the following
rationale:


 Limitations on these claims had been extended--not tolled--by virtue of prior agreements
between the Comptroller and the Company and by the pendency of administrative proceeding
number 34,943, so that limitations would expire on these claims on the day administrative
proceeding number 34,943 became final. (9)

 Administrative proceeding number 34,943 was settled and dismissed by Order of January 8,
1998.

 By further written agreement dated January 12, 1998, the Company waived its right to file
a motion for rehearing. Thus, as of January 12, 1998, administrative proceeding number
34,943 became "final" and the limitations period expired.

 Since the Company filed administrative proceeding number 43,135 thereafter, the instant
claims were barred by limitations.



 The Company argues that administrative proceeding number 43,135, asserting the instant
claims, was timely because (a) administrative proceeding number 34,943 became final January 28,
1998, rather than on January 12 as asserted by the Comptroller; (b) limitations was further extended,
under Section 111.104(c)(3) of the Texas Tax Code, for an additional six months after administrative
proceeding number 34,943 became final; and (c) the 1991 protective claim letter filed by the
Company independently tolled limitations on the claims at issue. We will address those arguments
in that order.

 (a) Administrative Proceeding Number 34,943 Became Final January 12, 1998

 The Company argues that, under Section 2001.144(a)(4) of the Texas Government Code,
administrative proceeding number 34,943 became final "on the date specified in the order," that is,
January 28, 1998. See Tex. Gov't Code Ann. § 2001.144(a)(4) (Vernon 2000). While Section
2001.144 applies generally to this analysis concerning the date of finality, Section 2001.144(a)(4)
does not apply here. Subsection (a)(4) applies only when "all parties agree to the specified date [of
finality] in writing or on the record." Id. Because the parties did not agree to a specific date of
finality "in writing or on the record," subsection (a)(4) does not apply. (10)

 We can also rule out the applicability of two of the three other subsections, subsection (a)(2),
which deals with a timely filed motion for rehearing, and subsection (a)(3), dealing with imminent
peril declared by the agency. See Tex. Gov't Code Ann. § 2001.144(a)(2)-(3). Since a timely
motion for rehearing was not filed and because no imminent peril declaration appears in the record,
neither of those subsections apply here.

 On the other hand, subsection (a)(1) does apply here, because a motion for rehearing was not
timely filed. That subsection provides that, when a timely motion for rehearing is not filed, the
decision is final "on the expiration of the period for filing a motion for rehearing." See Tex. Gov't
Code Ann. § 2001.144(a)(1). In this case, while the period for filing a motion for rehearing would
have normally expired January 28, 1998, the parties waived the right to file such a motion. That
meant that, because of the waiver, the period for filing such a motion had effectively expired the day
of the waiver. As no timely motion for rehearing was filed and there was no claim that the waiver
was somehow ineffective, the date of finality became the date of the waiver, January 12, 1998. Since
the Company filed administrative proceeding number 37,477 after that date, administrative
proceeding number 37,477 was not timely as to the instant claims, that is, these claims were barred
by limitations, unless the statute of limitations was further extended by one of the other two methods
advanced by the Company.

 (b) Section 111.104(c)(3) Does Not Extend Limitations Another Six Months for These
Claims

 The Company also argues that, under Section 111.104(c)(3) of the Texas Tax Code, it had
six months after finality to file administrative proceeding number 37,477. This subsection allows
a taxpayer to file a refund claim "before the expiration of the applicable limitation period . . . or
before the expiration of six months after a . . . deficiency determination becomes final, whichever
period expires later." Tex. Tax Code Ann. § 111.104(c)(3) (Vernon Supp. 2006).

 The Comptroller responds that Section 111.104 applies only if there has been a "deficiency
determination," which it says did not happen here. But the record reflects that a deficiency
determination, see Tex. Tax Code Ann. § 111.008 (Vernon 2001) (Deficiency Determination), was
made against the Company, which determination, we have held, became final January 12. Therefore,
Section 111.104 would apply to the Company's instant claims, if they fall within its terms.

 But the Company's claims do not fall within Section 111.104. Section 111.104(d), perhaps
inartfully, puts in proper context the claims to which Section 111.104 generally applies and, thus,
the claims for which Section 111.104(c) would extend the period of limitations. Section 111.104(d)
refers to a "refund claim for an amount of tax that has been found due in a jeopardy or deficiency
determination." Tex. Tax Code Ann. § 111.104(d) (Vernon Supp. 2006). There is no reason to
believe that subsection (d) would limit refund claims to the taxes found due in a Comptroller
determination, while the other subsections of Section 111.104 would not be so limited. We hold,
therefore, that the six-month extension of the period of limitations under Section 111.104(c) is
triggered not by just any deficiency determination, but only by a jeopardy or deficiency determination
on the same issues as the claims for which the extension is claimed. (11) Since the deficiency
determination in administrative proceeding number 34,943 was on a different set of issues as the
instant claims, the statute of limitations was not so extended.

 (c) The Company's 1991 "Protective Claim" Letter Cannot Make These Claims Timely

 Finally, the Company argues that, because a refund claim, for franchise taxes from the same
periods as those in question, had been filed February 28, 1991, the statute of limitations on the
instant claims was sufficiently tolled to save these claims. The Company asserts that the statute of
limitations is tolled by former Section 111.207(d) of the Texas Tax Code, which provided as
follows:

 In determining the expiration date for filing a refund claim for a tax imposed by this
title, the period during which an administrative proceeding is pending before the
comptroller for the same period and type of tax is not considered . . . .

Tex. Tax Code Ann. § 111.207(d) (Vernon 2001) (repealed effective June 20, 2003).

 The record does not reflect whether any action was ever taken relative to the Company's 1991
protective claim letter, by either party, for many years after its filing. That record silence, paired
with the minimal discussion by the parties concerning this earlier letter, suggests that the
Comptroller's factual assertion, that the letter was neither acted on by the Comptroller, nor pursued
by the Company, is tacitly accepted by the Company.

 The Comptroller argues this letter should not be allowed to toll limitations because of the
Company's lack of due diligence in pursuing it for eight years. The Comptroller cites as authority
for that proposition only Walls v. Travis County, 958 S.W.2d 944, 947 (Tex. App.--Austin 1998,
pet. denied); and Perry v. Kroger Stores, 741 S.W.2d 533, 534 (Tex. App.--Dallas 1987, no writ);
both cases dealing with due diligence in obtaining service of process against a defendant after the
expiration of the period of limitations. While those cases may provide some persuasive authority
to support the Comptroller's argument, they do not provide the "well established" precedent on this
point claimed by the Comptroller.

 The letter in question is what has become called a "protective claim," a letter which, by
practice, the Comptroller recognizes as a timely-filed claim, if followed by a substantive claim. The
letter requests a refund in very general terms:

 [Company] respectfully requests that it be granted a refund of franchise tax in an
amount which represents the difference between the total franchise tax previously
paid for . . . report years [1988-90] and the amount it should have paid.


 It is our intent to submit amended franchise tax reports for 1988, 1989 and 1990
which will reflect the use of alternative generally accepted accounting principles'
(GAAP) methods for the recognition of income and expenses.

While, in a colloquial sense, this protective claim letter may have presented a claim, we hold it is
insufficient to commence an "administrative proceeding" for the purpose of the tolling provided by
former Section 111.207(d).

 The Third Court of Appeals in Austin, presiding over the district from which this case
originates, ruled only last year on when, short of a formal administrative claim with a "hearing"
number, an "administrative proceeding" is pending under former Section 111.207(d) of the Texas
Tax Code. See Strayhorn v. Willow Creek Res., Inc., 161 S.W.3d 716, 723-28 (Tex. App.--Austin
2005, no pet.). That case held that an "informal [claim] review" process by the Comptroller was an
"administrative proceeding" which tolled the statute of limitations under former Section 111.207(d). 
The Austin court so held because the "informal review" process under consideration (1) involved a
dispute, (2) was begun by a document, served on the opposing party, analogous to a complaint in a
civil lawsuit, in that it involved an accusation or statement of issues, and (3) the document "set in
motion mechanisms . . . under which the dispute will ultimately be resolved" and "in which the non-initiating party has a legal duty to respond." Id. at 724 (citing Hickel v. Halford, 872 P.2d 171, 178,
181 (Alaska 1994)).

 Here, the Company's protective claim letter was intended to make timely the Company's
change of its accounting method. It was intended that the Company would follow that letter with
some further action. At the very least, there was no requirement that the Comptroller respond to the
protective claim letter. For that reason, the protective claim letter was insufficient, under the
authority of Willow Creek, to initiate an "administrative proceeding" and thus begin the tolling of
former Section 111.207(d).

 Therefore, the instant claims are not saved by the tolling provided by former Section
111.207(d) of the Texas Tax Code.

 For the above reasons, the instant claims were, as a matter of law, barred by limitations; and
the summary judgment for the Comptroller on these claims was proper. Because we so hold, we do
not address the other issues argued by the parties on these claims, finality and exhaustion of
remedies.

(3) The Comptroller Was Not Entitled to Summary Judgment Denying the Company's Request
to Deduct (A) Interstate Gas Transportation Revenues, (B) Amounts Attributable to
Unamortized Losses on Reacquired Debts, and (C) $1,988,202.00 Included in the Company's
Account Number 228-4000

 The Company next contends it is entitled to the removal of amounts it says were improperly
included in the company's taxable capital for the tax year 1991. In the trial court and in its brief to
this Court, the Comptroller asserted these claims were time barred. At oral argument, however, the
Comptroller conceded these claims were not time barred and asked to have this issue remanded to
the trial court for determination of the Company's 1991 tax liability. While the Company happily
accepted the Comptroller's concession on this point, the Company disagreed with the Comptroller's
proposed remedy--remanding the case for further proceedings regarding the 1991 tax year. Instead,
the Company has asked us to use the existing record to determine the Company's proper surplus
valuation and to render the appropriate judgment for the Company.

 As stated above, summary judgment is appropriate when no genuine issue of material fact
exists and the movant demonstrates it is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c). The record before us contains conflicting evidence regarding the proper valuation of the
Company's 1991 surplus. The Company's summary judgment evidence, if undisputed, would
support a reduction of its 1991 surplus valuation by the amounts of $24,147,150.00 for its
unamortized losses, $1,988,202.00 for its claim relative to its account number 228-4000, and
$172,438,869.00 for its interstate gas transportation claim. The Comptroller, however, presented
evidence that the Company's 1991 refund, if any, might be much lower. Some of the Comptroller's
evidence suggests the Company's surplus should be reduced by $3,277,170.75. Other evidence in
the record suggests the proper reduction is $1,965,437.25. The summary judgment evidence is
clearly in conflict. Accordingly, we cannot say that no genuine issue of material fact exists on this
issue. We must, therefore, remand this issue to the trial court for further proceedings.

Conclusion

 We reverse the partial summary judgment in favor of the Company which decreed that it was,
as a matter of law, entitled to amend its 1989 and 1990 franchise tax reports to reflect a change in
accounting methods from the "full cost" accounting method to the "successful efforts" method. We
affirm the partial summary judgment in favor of the Comptroller which decreed that the Company
was barred, as a matter of law, from pursuing its interstate gas transportation and unamortized losses
claims for 1989 and 1990. And, in accordance with the Comptroller's concession at oral argument,
we reverse and remand that portion of the trial court's summary judgment regarding all claims for
franchise tax year 1991. We remand this case to the trial court for further proceedings consistent
with this opinion.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 18, 2006

Date Decided: October 18, 2006
1. This case originated in Travis County. Under the system for equalization of dockets among
the fourteen Courts of Appeals in this state, the appeal was transferred to this Court from our sister
court in Austin. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005).
2. Generally, a business owing franchise taxes to the State of Texas must calculate the
company's tax obligation based on the value of its net taxable capital. Tex. Tax Code Ann.
§ 171.001 (Vernon Supp. 2006) (tax imposed); Tex. Tax Code Ann. § 171.002 (Vernon Supp.
2006) (computation of tax based on percentage of net taxable capital and percentage of net taxable
capital earned surplus); Tex. Tax Code Ann. § 171.109 (Vernon Supp. 2006) (defining "surplus"
and "net assets"). The larger the valuation of the company's "surplus" of net taxable capital, the
greater the franchise tax owed by the company to the State. Tex. Tax Code Ann. § 171.109. There
are various exclusions and exemptions a business may claim to lower its surplus valuation, thereby
also lowering the company's franchise tax bill. See generally Chapter 171 of the Texas Tax Code.
Tex. Tax Code Ann. §§ 171.0001-.894 (Vernon 2002 & Supp. 2006). For example, if a company
transacts business outside Texas, the company's franchise tax obligation to Texas shall be based
solely on the percentage of its Texas-earned surplus in proportion to the surplus revenue from its
entire business. Tex. Tax Code Ann. § 171.106(a). State law requires companies to use "generally
accepted accounting principles" (GAAP) to calculate their net taxable capital. Tex. Tax Code Ann.
§ 171.109. There are different accounting methods companies may use to calculate their net taxable
capital, and the method a company uses will change the final valuation of that company's net taxable
capital. Businesses are also required to use the same accounting method as the previous year, unless
the business has first notified the Texas Comptroller that it will switch accounting methods for the
upcoming reporting year. With limited exceptions, "a corporation may not change the accounting
methods used to compute its surplus more often than once every four years without the written
consent of the comptroller. A change in accounting methods is not justified solely because it results
in a reduction of tax liability." Tex. Tax Code Ann. § 171.109(e). 
3. Act of May 23, 1989, 71st Leg., R.S., ch. 1198, § 3, 1989 Tex. Gen. Laws 4889, 4890
(effective Jan. 1, 1990).
4. In essence, the Legislature had changed the rules in the middle of the game. The
Comptroller apparently tried to ameliorate any perceived unfairness by allowing companies to make
retroactive changes so as to compensate for a mid-game rule change that, absent Comptroller
intervention, may have subjected this law and procedure to legal challenge.
5. This deadline created a temporary change in Comptroller's Rule 3.391, and permitted
petroleum businesses to retroactively change their accounting methods for franchise tax report years
1988, 1989, and 1990. However, because this was a rule change and not a statutory change, the
Comptroller was authorized to limit the time frame for the rule change's applicability. See Tex. Tax
Code Ann. § 111.002(a) (Vernon 2001) ("comptroller may adopt, repeal, or amend such rules to
reflect changes in power of this state to collect taxes and enforce the provisions of this title . . . ."). 
The reason it is critical to recognize this methodology shift as a rule change is that, generally, the
Comptroller's franchise tax rules do not allow a retroactive accounting change (except for
mathematical or accounting errors). Yet, as Section 111.002(a) of the Texas Tax Code makes clear,
the Comptroller has statutory discretion to adopt reasonable rule changes that do not conflict with
Texas law. Thus, for the limited period of late February 1991, the Comptroller broke from the usual
custom of prohibiting retroactive amendments to accounting methods, and the Comptroller allowed
companies to do just that for tax years 1988, 1989, and 1990. 
6. The Comptroller considered a protective claim letter to be timely filed if it was postmarked
on or before February 28, 1991, and thereafter received by the Comptroller. 
7. Appellate courts may dismiss arguments and issues that have been inadequately briefed on
the basis that they fail to present anything for review. See, e.g., Save Our Springs Alliance, Inc. v.
Lazy Nine Mun. Util. Dist., No. 06-05-00058-CV, 2006 Tex. App. LEXIS 6185, at *21 n.9 (Tex.
App.--Texarkana June 1, 2006, no pet.); Haas v. George, 71 S.W.3d 904, 914 (Tex.
App.--Texarkana 2002, no pet.).
8. Generally, businesses will amortize (deduct from net taxable capital) the costs of a long-term
debt over the period in which the business has to pay that debt. This is similar to expensing the costs
of a home loan for a new buyer who pays interest and taxes on the transaction. Such taxes and
interest are generally deductible from the homeowner's federal taxes. When a business "reacquires
debt" by paying off a bank loan before it is due, the business sometimes pays a prepayment penalty
on the loan. This results in an extra expense or "loss" that is associated with the debt, but which has
not been previously amortized over the life of the loan. Much like a homeowner who deducts
closing costs from his or her federal taxes for the year in which a home is purchased, accounting
practices usually permit a business' unamortized losses on reacquired debt to be deducted from its
net taxable capital during the year in which those expenses accrue. 
9. No authority is cited by the Comptroller for this original premise. The Company, however,
does not contest this basic premise. Therefore, for the purpose of this opinion, we will assume this
premise  and  will  confine  ourselves  to  the  Company's  three  arguments,  (a)  the  actual  finality
date, (b) the further six-month extension afforded by Section 111.104, and (c) tolling from the 1991
filing.
10. It could be said, in something which may be near the Comptroller's position, that the parties
did effectively agree to a date of finality in the waiver document, i.e., the date when the right to
continue the fight, via motion for rehearing, was waived; so if (a)(4) does apply, the date
administrative proceeding number 34,943 became final was January 12, 1998. But we conclude a
better reading of the statute would apply subsection (a)(1).
11. Claims that can be so extended are also limited "to the amount of tax, penalty, and interest
and to the tax payment period for which the determination was issued." Tex. Tax Code Ann.
§ 111.104(d).