MIKEY'S HOUSES LLC and Helen
L. Martin, Joyce A. Powell,
Appellants,

v.

BANK OF AMERICA, N.A., Appellee.

No. 2–05–397–CV.

Court of Appeals of Texas,
Fort Worth.

May 3, 2007.

Rehearing Overruled July 5, 2007.

---

12. *See id.*

Eric S. Lipper, Hirsch & Westheimer, P.C., Houston, for Appellee.

PANEL F: LIVINGSTON, GARDNER, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. Introduction

This is an interlocutory appeal from the trial court's order granting Appellee Bank of America, N.A.'s motion to enforce a contractual jury waiver. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(d) (Vernon Supp.2006). In one issue, Appellants Mikey's Houses, LLC, Helen L. Martin, and Joyce A. Powell contend that the trial court erred by granting Bank of America's motion to enforce the prelitigation contractual jury waiver. Because we hold that Bank of America did not meet its burden of producing prima facie evidence that Martin and Powell knowingly and voluntarily made the prelitigation contractual waiver of their constitutional right to trial by a jury, we reverse the trial court's order enforcing the waiver.

### II. Background Facts

Mikey's Houses LLC is a Texas limited liability corporation owned by Martin and Powell. Martin and Powell formed Mikey's Houses to buy foreclosed homes and renovate them for resale.[1] On March 18, 2003, Mikey's Houses entered into a contract with Bank of America to purchase a house and lot at 3325 Meadowbrook in Fort Worth for $54,000.00. Martin signed the contract as President, and Powell signed it as Vice President. Either Bank

Jay L. Gueck, Olson, Nicoud & Gueck, L.L.P., Dallas, for Appellants.

---

1. There is no evidence in the record showing how long Mikey's Houses had been in this business.

of America or Bank of America's broker drafted the contract. After Martin and Powell, on behalf of Mikey's Houses, and Bank of America had signed the sales contract, Martin and Powell were presented with an addendum to the contract from Bank of America,[2] which they both signed. The addendum is a two-page, single-spaced document entitled "Bank of America Mortgage Addendum to Contract;" it is not a standard Texas Real Estate Commission Form.

> Paragraph 13 of the addendum provides, Waiver of Trial by Jury. Seller and Buyer knowingly and conclusively waive all rights to trial by jury in any action or proceeding relating to this Contract.

Bank of America contends that the phrase "Waiver of Trial by Jury" is bolded, but we cannot tell from our examination of the addendum contained in the clerk's record and the copy of the addendum attached as an appendix to Appellants' brief whether this phrase is bolded or not.[3] Many of the addendum's other numbered paragraphs begin with a descriptive phrase, such as "11. Termination of Contract" or "14. Conflict." The "Waiver of Trial by Jury" phrase does not appear to be any more or any less bolded than the other introductory phrases in the addendum. Bank of America also points out that the phrase "Waiver of Trial by Jury" is underlined. While it is true that this phrase is underlined, it appears that at some point someone underlined it by hand, not that it was underlined when the addendum was printed. Entire sentences and some of the other paragraph titles in the addendum likewise appear to be hand-underlined. We cannot tell from the record whether these sentences and phrases were hand-underlined before or after the addendum was executed.

The parties did not verbally discuss the jury waiver provision in the addendum. Appellants were not represented by counsel nor did they have an attorney review the contract or the addendum for them. It is undisputed that neither the contract nor the addendum was negotiated and that the addendum was separately presented to Martin and Powell after they had executed the sales contract.

After the April 15, 2003 closing, when Appellants later received the deed and title policy, they discovered that Bank of America had, in fact, only had title to and sold them a thirty-foot strip of land rather than the house and lot that they thought they had purchased. Appellants sued Bank of America for breach of contract, specific performance, negligence, negligent or intentional misrepresentation, breach of express and implied warranties, DTPA violations, and fraud. Bank of America filed a motion to enforce the contractual jury waiver set forth in paragraph 13 of the addendum as to all of Appellants' claims. After a hearing, the trial court granted the motion and signed an order allowing an interlocutory appeal under section 51.014(d) of the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(d).

## III. ANALYSIS

### A. Standard of Review

Because the issue on appeal involves a question of law, we review it de novo. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 239 (Tex.2003).

---

**2.** The evidence establishes that this presentment occurred *subsequent* to the signing of the sales contract, but the length of time that elapsed before the addendum was presented is not clear.

**3.** We have attached a copy of the addendum to this opinion as Appendix A.

## B. The Right to a Jury Trial Is a Constitutional Right

The Seventh Amendment of the United States Constitution provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of common law." U.S. CONST. amend. VII. The Texas Constitution likewise provides that "[t]he right of trial by jury shall remain inviolate" and that "[i]n the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury." TEX. CONST. art. I, § 15,[4] art. V, § 10. Clearly, the right to a jury trial in civil disputes—when the right existed at common law—is a constitutional right. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 132 (Tex.2004) (original proceeding) (recognizing the right to trial by jury is a constitutional right to be given the "same protections as other constitutional rights"); Nicole Mitchell, Note, *Pre–Dispute Contractual Jury Waivers: The New Arbitration in Texas? A Case Note on* In re Prudential Insurance Company of America, 58 BAYLOR L.REV. 243, 244 (2006); *see also* Brief of Gerald R. Powell as *Amicus Curiae*, 1–3, *in Coca–Cola Co. v. Harmar*

*Bottling Co.*, 50 Tex. Sup.Ct. J. 21, 2006 WL 2997436 (Tex. Oct. 20, 2006).

## C. In Texas, Prelitigation Contractual Jury Waivers Are Not Per Se Unenforceable but Must Be Knowing and Voluntary

 The constitutional right to trial by jury may be waived via contract so long as the waiver is made knowingly, voluntarily, and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *In re Prudential*, 148 S.W.3d at 132 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)).[5] In holding that prelitigation contractual jury waivers are not per se unenforceable, the Texas Supreme Court in *In re Prudential* expressly "echo[ed] the United States Supreme Court's admonition [in *Brady v. United States* ] that 'waivers of constitutional rights must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* Thus, the Texas Supreme Court equated the Texas standard for a "knowing and voluntary" prelitigation contractual jury waiver with the "knowing and voluntary" standard utilized in criminal cases like *Brady* to assess the validity of a defendant's pretrial waiver of a jury trial via a guilty plea.[6] *In re Prudential*, 148

---

4. The interpretive commentary for article I, section 15 explains, in part,

> Trial by jury has been considered as a fundamental safeguard of constitutional liberty. The Declaration of Independence complains of the British Government for denying the colonists in many cases a trial by jury. The Texas Declaration of Independence makes the same indictment against Mexico, declaring that Mexico "has failed and refused to secure, on a firm basis, the right of trial by jury, that palladium of civil liberty, and only safe guarantee for the life, liberty, and property of the citizen." As a result[,] the right was placed in the Bills of Rights of both

the United States Constitution and that of Texas.

TEX. CONST. art. I, § 15 interp. commentary (Vernon 1997).

5. *But see Grafton Partners L.P. v. Superior Court*, 36 Cal.4th 944, 32 Cal.Rptr.3d 5, 116 P.3d 479, 484 (2005) (holding prelitigation contractual jury waivers unenforceable); *Bank S., N.A. v. Howard*, 264 Ga. 339, 444 S.E.2d 799, 800 (1994) (same).

6. The supreme court's selection of the *Brady* knowing and voluntary standard seems especially significant because Justice Hecht, who later expressed concern over the decrease in

S.W.3d at 132; *see Brady*, 397 U.S. at 748, 90 S.Ct. at 1469. *But see L & R Realty v. Conn. Nat'l Bank*, 246 Conn. 1, 715 A.2d 748, 755 (1998) (holding in commercial loan transaction "that it is appropriate to apply a lower standard in determining the enforceability of prelitigation contractual jury trial waivers than for waivers in criminal cases"). This was a logical step by the supreme court because a guilty plea, once expressly approved by the trial court, is a binding contract between the State and the defendant, that is, a guilty plea *is* a prelitigation contractual jury waiver.[7] The *Brady* standard for a "knowing and voluntary" jury waiver requires a consideration of all relevant surrounding circumstances and requires special scrutiny when the litigant is not represented by counsel. *Brady*, 397 U.S. at 748 n. 6, 749, 90 S.Ct. at 1469.

**D. Burdens of Proof to Establish That Prelitigation Contractual Jury Waiver Was Made Knowingly and Voluntarily**

**1. Presumption against jury waiver; arbitration procedures do not apply[8]**

■ Because the right to a jury trial is a constitutional right, the United States Supreme Court has recognized that every reasonable presumption is indulged against the waiver of that right. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937) ("But, as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."); *Hodges v. Easton*, 106 U.S. 408, 412, 1 S.Ct. 307, 311, 27 L.Ed. 169 (1882) ("It has been often said by this court that the trial by jury is a fundamental guaranty of the rights and liberties of the people. Consequently, every reasonable presumption should be indulged against its waiver."); *see also College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681–82, 119 S.Ct. 2219, 2229, 144 L.Ed.2d 605 (1999) (recognizing in different context that "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights"); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986) (recognizing that "Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried."); *RDO Fin. Servs. Co. v. Powell*, 191 F.Supp.2d 811, 813 (N.D.Tex.2002) (holding prelitigation waiver of jury trial "must be made knowingly and voluntarily, and courts will indulge in every reasonable presumption against a waiver of that right").

■ The Texas Supreme Court's recognition in *In re Prudential* that the right

---

civil jury trials, was the author of *In re Prudential*. *See* Nathan L. Hecht, *The Vanishing Civil Jury Trial: Trends in Texas Courts and an Uncertain Future*, 47 S. Tex. L.Rev. 163 (2005).

7. *See, e.g., Ortiz v. State*, 933 S.W.2d 102, 104 (Tex.Crim.App.1996); *Perkins v. Court of Appeals for the Third Supreme Judicial Dist. of Tex.*, 738 S.W.2d 276, 283–84 (Tex.Crim.App. 1987).

8. We note that when a prelitigation contractual jury waiver provision is subsumed within an arbitration agreement, the procedural and substantive rules concerning arbitration do apply. *See, e.g., In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 675 (Tex.2006) (orig.proceeding) (involving arbitration agreement that also contained jury trial waiver provision and applying arbitration rules). Our discussion here is limited in applicability to stand-alone prelitigation contractual jury waivers intended to preclude a litigant from requesting a jury trial in a dispute that may be resolved through the court system.

to trial by jury is a constitutional right means that the starting point of our analysis is a presumption[9] against the waiver of this constitutional right. *See, e.g., Aetna Ins. Co.*, 301 U.S. at 393, 57 S.Ct. at 811–12; *In re Prudential*, 148 S.W.3d at 132 (giving right to trial by jury "same protections as other constitutional rights"); *accord Ex parte Cupps*, 782 So.2d 772, 775 (Ala.2000) (construing scope of contractual jury waiver strictly and narrowly "in deference to the constitutional guarantee of the right to a jury trial"); *see also* Note, 58 BAYLOR L.REV. at 259. *But see Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Ct.*, 118 Nev. 92, 40 P.3d 405, 410 (2002) (holding—without reference to Supreme Court case law to the contrary—that in Nevada contractual jury waivers are presumptively valid).

Despite the existence of a presumption *against* the waiver of the constitutional right to trial by a jury, some courts have applied the burden-of-proof rules used to enforce the presumption *favoring* arbitration to contractual jury waivers. *See In re Wells Fargo Bank Minn., N.A.*, 115 S.W.3d 600, 609–10 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding) (applying presumption of validity to contractual jury waiver—i.e., presuming that jury waiver *was* knowingly and voluntarily made—based on statement in jury waiver provision itself that waiver was "knowing and voluntary"). The standards governing the enforceability of arbitration clauses are inapplicable to prelitigation contractual jury waiver provisions for several reasons.

▮▮ First, public policy favors arbitration, while the same cannot be said of the waiver of constitutional rights. *Compare In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998) (recognizing public policy favors arbitration) *with RDO Fin. Servs. Co.*, 191 F. Supp.2d at 813 (recognizing that courts will indulge in every reasonable presumption against waiver of the constitutional right to trial by a jury). Second, with only few exceptions, courts are required by statutory directives—the Federal Arbitration Act and the Texas General Arbitration Act—to compel arbitration if an agreement to arbitrate exists and one party is refusing to arbitrate. *See* Federal Arbitration Act, 9 U.S.C. § 4 (2005); TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a) (Vernon 2005); *see also, e.g., In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782–83 (Tex.2006) (orig.proceeding) (recognizing strong presumption favoring arbitration); *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (orig.proceeding) (same); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992) (orig.proceeding) (same). These statutes—titled arbitration acts—clearly do not apply to non-arbitration contracts. No comparable statutory mandate exists directing courts to compel enforcement of contractual jury trial waivers. Third, arbitration constitutes an agreement by the parties to avoid the judicial process altogether, not an agreement to limit one's rights following the invocation of the judicial process. A contractual jury waiver does not eliminate the court system from the resolution of the dispute but instead eliminates a litigant's access to a jury, an essential component of the court system. A distinction exists between an agreement to resolve disputes out of court and an agreement to resolve disputes in court but to waive constitutional aspects of that in-court resolution. *Accord Grafton Partners L.P.*, 32 Cal.Rptr.3d 5, 116 P.3d at 484 (holding that the "analogy to arbi-

---

9. A presumption is a rule of law "by which the finding of a basic fact gives rise to the existence of the presumed fact, until the presumption is rebutted." *See, e.g., Hunter v. Palmer*, 988 S.W.2d 471, 473 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

tration agreement is not persuasive" in part because "the principal feature of an arbitration agreement is that the contracting parties agree they will not submit their controversy to a court of law in the first instance"). And finally, the standards governing the enforceability of arbitration clauses are inapplicable because they conflict with the *Brady* knowing and voluntary standard adopted by the supreme court in *In re Prudential. Compare Brady*, 397 U.S. at 746, 90 S.Ct. at 1469 n. 6 (emphasizing that to be voluntary a jury trial waiver must be "done with sufficient awareness of the relevant circumstances and likely consequences") *with In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999) (orig.proceeding) (holding that once the party seeking to compel arbitration establishes the existence of an arbitration agreement and that the claims raised fall within the scope of that agreement, the trial court must compel arbitration), *abrogated in part on other grounds by In re Halliburton Co.*, 80 S.W.3d 566, 571–72 (Tex.2002) (orig.proceeding). The *Brady* standard requires more than simply a showing that a contractual jury waiver exists and that the claims fall within it; application of the arbitration procedures to determine the enforceability of prelitigation contractual jury trial waivers would permit enforcement of jury trial waivers absent any showing that the waiver was knowingly and voluntarily made.

 Thus, we begin our analysis at a different point than the point at which an arbitration analysis begins. In an analysis of an order granting or denying a motion to compel arbitration, we would begin by determining whether the party seeking ar-

bitration had established that an arbitration agreement existed and that the claims sought to be arbitrated were within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573. Here, however, we begin with a presumption *against* the contractual waiver of the constitutional right to trial by jury. *See, e.g., Aetna Ins. Co.*, 301 U.S. at 393, 57 S.Ct. at 811–12; *see also* Note, 58 BAYLOR L.REV. at 259. That is, the existence of the basic fact of a contractual jury trial waiver gives rise to a presumed fact that the waiver was not knowingly and voluntarily made until the presumed fact is rebutted. *Accord Hunter*, 988 S.W.2d at 473. Because we begin with this presumption, the burden is on the party seeking to enforce the prelitigation contractual jury waiver to rebut this presumption with evidence that the waiver was knowingly and voluntarily made with full awareness of the legal consequences. *In re Prudential*, 148 S.W.3d at 132–33 (enforcing contractual jury waiver when "undisputed" facts established waiver was knowing and voluntary as a matter of law); *accord In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex.2006) (orig.proceeding) (recognizing that contractual jury waiver provision that was "conspicuous"—because it was in bolded font and in all capital letters—met burden of party seeking to enforce provision to make prima facie showing that waiver was knowing and voluntary). *But see L & R Realty*, 715 A.2d at 754–55 (placing burden of proof and production on party seeking to avoid enforcement of contractual jury waiver).[10] That is, the mere fact that a contractual jury waiver exists and that the claims are within its scope does not

10. The Connecticut Supreme Court based its analysis in part on its application of a lower standard in determining the enforceability of prelitigation contractual jury trial waivers than for waivers in criminal cases. *L & R Realty*, 715 A.2d at 755. But, as previously discussed, the Texas Supreme Court has not adopted a lower standard for determining the enforceability of contractual jury waivers; it has adopted the same standard as that used to determine the enforceability of a jury waiver in a criminal case. *In re Prudential*, 148 S.W.3d at 132 (citing *Brady v. United States* and concluding that "under those conditions

shift the burden to the party opposing enforcement of the contractual jury waiver. Instead, only if the party seeking to enforce the jury waiver provision brings forward at least prima facie evidence that the waiver was knowingly and voluntarily made, rebutting the presumption against jury trial waivers, does the burden shift to the opposing party to establish that the waiver was not made knowingly and voluntarily.[11] *In re Gen. Elec. Capital Corp.,* 203 S.W.3d at 316 (recognizing initial burden of presenting prima facie evidence that jury waiver was knowingly and voluntarily made is on party seeking to enforce provision); *RDO Fin. Servs. Co.,* 191 F.Supp.2d at 813–14 (recognizing "the majority of federal courts have held that the party seeking enforcement of the [contractual jury] waiver has the burden" of showing a knowing and voluntary waiver).

## 2. Factors that may rebut the presumption against jury waiver[12]

Evidence of the following factors may be considered in determining whether the party seeking to enforce a contractual waiver of the right to a jury trial has rebutted the presumption against the waiver: (1) the parties' experience in negotiating the particular type of contract signed, (2) whether the parties were represented by counsel, (3) whether the waiving party's counsel had an opportunity to examine the agreement, (4) the parties' negotiations concerning the entire agreement, (5) the parties' negotiations concerning the waiver provision, if any, (6) the conspicuousness of the provision, and (7) the relative bargaining power of the parties. *Accord In re Gen. Elec. Corp.,* 203 S.W.3d at 316 (examining conspicuousness under factor 6); *In re Prudential,* 148 S.W.3d at 134 (examining facts falling into first four categories); *RDO Fin. Servs. Co.,* 191 F.Supp.2d at 813–14 (enunciating factors as including 1, 4, 5, 6, and 7 above); *Lowe Enters. Residential Partners, L.P.,* 40 P.3d at 410 (enunciating factors as including 3, 5, 6, and 7 above); *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 627 (Mo.1997) (enunciating factors as including 1, 2, 4, 5, 6, and 7 above).

[compliance with *Brady's* knowing and voluntary standards], however, a party's right to trial by jury is afforded the same protections as other constitutional rights").

11. The dissent claims that the parties conceded in oral argument that Bank of America's initial burden of proof had been met. The dissent overlooks, however, that the parties made this "concession" prior to the supreme court's decision in *In re General Electric Capital Corporation* explaining the initial burden of proof to establish a knowing and voluntary contractual jury trial waiver and based on the erroneous assumption that arbitration procedures applied; the "concession" was thus nothing more than an agreement that Bank of America had established that a contractual jury waiver existed. *See, e.g., In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 573 (recognizing that in reviewing ruling on motion to compel arbitration we first determine whether party seeking arbitration established existence of arbitration agreement).

We agree that Bank of America has established the existence of a contractual jury waiver. But proof of, or a concession as to the existence of, this fact does not meet Bank of America's initial burden of proof under controlling case law. *See In re Gen. Elec. Capital Corp.,* 203 S.W.3d at 316; *In re Prudential,* 148 S.W.3d at 132–33.

12. If the party seeking to enforce the contractual jury waiver rebuts the presumption against the waiver by bringing forward prima facie evidence that the jury waiver was knowingly and voluntarily made, the burden is shifted to the opposing party to establish that the jury waiver was not knowing and voluntarily made; these same factors may be considered in determining whether the party opposing enforcement has met that burden. *See In re Gen. Elec. Capital Corp.,* 203 S.W.3d at 316 (explaining that prima facie evidence of knowing and voluntary waiver shifts burden to opposing party).

### 3. Facts in the present case concerning the jury waiver

The waiver here was not included in the Texas Real Estate Commission standard one-to-four family residential contract. Nor was it presented to Martin and Powell concurrently with the sales contract. Instead, after the sales contract had been executed, Bank of America presented a two-page addendum to the contract to Martin and Powell for their signatures. No evidence exists in the record that the sales contract or the addendum were negotiated.

Paragraph thirteen, in the middle of the second page of the addendum, provides as follows: "Waiver of Trial by Jury.[13] Seller and Buyer knowingly and conclusively waive all rights to trial by jury, in any action or proceeding relating to this Contract." This paragraph is not set forth any differently than the other paragraphs in the addendum; that is, the entire paragraph is not printed in larger font, not printed in a different color, not bracketed or starred, does not have blanks beside it for the Seller and Buyer to place their initials, nor does it possess any unique features to distinguish it or make it stand out from the other twenty paragraphs in the addendum, as seen in Appendix A.

Martin testified that Mikey's Houses was not represented by counsel. She did not recall reading the jury waiver paragraph and testified that it was not discussed or explained. She said that she did not understand that by signing the addendum she was waiving her constitutional right to trial by a jury. She said that she did not understand the consequences of the provision.

On cross-examination, Martin agreed that she had an opportunity to review the addendum and could have reviewed it line for line if she had chosen to. She stated that Bank of America did not rush her into signing it and agreed that she probably could have retained counsel to review it if she had wished.

### 4. Application of the law to the present facts

■ The evidence about the jury waiver is undisputed; thus, we must determine as a matter of law whether that evidence establishes that Bank of America rebutted the presumption against waiver of the constitutional right to trial by a jury. *In re Prudential,* 148 S.W.3d at 134. Although there is nothing in the record to indicate how long Martin and Powell had been in business, the record does show that the purpose of their Mikey's Houses business was to "buy and rehab houses and sell them." And the record indicates that this was probably not the first property Martin and Powell had purchased because when Martin was asked whether any representations were made to her as to why the addendum was necessary, she replied, "Most addendums [sic] are just that you accept the property as is, without any— you know, without the seller doing any kind of repairs." Thus, the first factor, experience of the parties, does not establish that Martin and Powell knowingly and voluntarily made the waiver nor does it meet Bank of America's burden to produce prima facie evidence of a knowing and voluntary waiver.

■ Importantly, Martin and Powell were not represented by counsel, and no attorney reviewed the contract or the addendum on their behalf. Because "[w]aiv-

---

13. As mentioned above, we cannot tell whether this introductory phrase is bolded, but to the extent it may be, it is bolded only like the other introductory phrases in the addendum; it is not unique.

ers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences," an assessment of relevant advantages of a waiver of the right to trial by a jury is frequently impossible without the assistance of counsel. *See Brady*, 397 U.S. at 746, 90 S.Ct. at 1469, n. 6. Consequently, the absence of counsel here means that the second and third factors, whether the parties were represented by counsel and whether the waiving party's counsel had an opportunity to review the waiver, weigh against a finding that Martin and Powell knowingly and voluntarily made the waiver. And evidence that Martin and Powell were not represented by counsel certainly does not meet Bank of America's burden to produce prima facie evidence of a knowing and voluntary waiver.

No evidence exists that Martin and Powell negotiated any aspect of the sales contract or the waiver provision. Both the sales contract and the addendum were pre-printed forms labeled as Bank of America documents. Accordingly, factors four and five, the parties' negotiations concerning the entire agreement and concerning the waiver provision, weigh against a finding that Martin and Powell knowingly and voluntarily made the waiver. An absence of evidence of negotiation does not meet Bank of America's burden to produce prima facie evidence of a knowing and voluntary waiver.

And the waiver provision here was not conspicuous.[14] It was set forth exactly as the other paragraphs in the addendum; it was not in larger or bolder font than the remainder of the addendum. *Cf. In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316 (holding contractual jury waiver provision that was in **ALL CAPITAL LETTERS AND WAS BOLDED** was conspicuous) (emphasis added); *see also* Tex. Bus. & Com.Code Ann. § 1.201(b)(10) (Vernon Supp.2006) (defining "conspicuous" for purposes of the Uniform Commercial Code). Nothing appears on the face of the two-page, single-spaced "Bank of America Mortgage Addendum to Contract" to attract the attention of a reasonable person to the jury waiver provision when he looks at the addendum.[15] *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993) (recognizing that to be conspicuous, something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it). Nor did Martin or Powell initial the waiver provision, which would have established their actual knowledge of the waiver. *See, e.g., Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 332–33 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (holding that signatory's initials by specific indem-

---

14. The dissent would hold that the addendum's waiver provision is conspicuous, that the burden of proof consequently shifted to Martin and Powell, and that the evidence weighing in Martin's and Powell's favor under each of the other factors is nonetheless insufficient to rebut Bank of America's purported prima facie showing of a knowing and voluntary waiver based on the allegedly conspicuous jury waiver provision. Even if the waiver provision here could somehow be construed as being conspicuous, the evidence concerning the remaining factors rebuts any prima facie showing of a knowing and voluntary waiver based on conspicuousness.

15. If in fact the phrase "Waiver of Trial by Jury" was underlined as a feature of the addendum before Martin and Powell signed it, this fact would not change our analysis because numerous introductory descriptive phrases, and entire sentences, in the twenty-paragraph addendum are likewise underlined. In other words, the underlining throughout the addendum is extensive enough that the underlining of the jury waiver provision does not attract the attention of a reasonable person looking at the addendum.

nity provision established signatory's actual knowledge of provision). Consequently, factor six, the conspicuousness of the waiver, weighs against a finding that Martin and Powell knowingly and voluntarily made by the waiver. An inconspicuous waiver provision in a twenty-paragraph "Bank of America Mortgage Addendum to Contract" does not meet Bank of America's burden to produce prima facie evidence of a knowing and voluntary waiver.

And finally, the relative bargaining power of the parties obviously was not equal. Thus, factor seven, the relative bargaining power of the parties, weighs against a finding that Martin and Powell knowingly and voluntarily made the waiver. An absence of evidence of equal bargaining power does not meet Bank of America's burden to produce prima facie evidence of a knowing and voluntary waiver.

In short, in the record before us, Bank of America produced no evidence showing that Martin and Powell knowingly and voluntarily waived their constitutional right to trial by a jury. No evidence exists that Martin and Powell's waiver of their constitutional right to trial by a jury was an "intelligent act done with sufficient awareness of the relevant circumstances and likely consequences" as required by *In re Prudential.* 148 S.W.3d at 132; *RDO Fin. Servs. Co.*, 191 F.Supp.2d at 814 (holding under similar facts "as a matter of law, that a knowing and voluntary waiver of Powell's right to a jury trial has not been demonstrated"). Consequently, Bank of America failed to meet its burden to make a prima facie showing on this issue as required by *In re General Electric Capital Corporation.* 203 S.W.3d at 316. To the contrary, the evidence establishes that the

*Brady* knowing and voluntary standard was not met here. *See In re Prudential,* 148 S.W.3d at 132 (requiring jury waiver to be made "with sufficient awareness ... of likely consequences"); *see also Brady,* 397 U.S. at 748–49, 90 S.Ct. at 1469–70 (recognizing difficulty in making intelligent assessment of consequences of waiver of jury trial via guilty plea absent counsel).

Bank of America argues that the present facts are indistinguishable from the facts in *In re Prudential,* where the supreme court enforced a prelitigation contractual jury waiver; we cannot agree. In *In re Prudential,* the Secchis—the buyers—negotiated with Prudential for six months prior to executing the lease that contained the jury waiver provision; no evidence exists here that Martin and Powell negotiated the sales contract or addendum. In *In re Prudential,* the Secchis were represented by counsel in their negotiations with Prudential; Martin and Powell were not represented by counsel at all in their transaction with Bank of America. In *In re Prudential,* Jane Secchi went over the lease with the Secchis' lawyer; no one "went over" the addendum with Martin and Powell or pointed out the jury waiver provision. In *In re Prudential,* the jury waiver provision was in the lease initially signed by the Secchis; Martin and Powell were presented with the addendum containing the jury waiver provision after they believed the sale had been completed and were not expecting any new terms other than "as is" language. The supreme court in *In re Prudential* based its holding in that case on the facts listed above, which are not present in this case. *In re Prudential,* 148 S.W.3d at 134.[16]

---

16. The supreme court explained,

 The Secchis admitted, however, that they had negotiated commercial leases before, that they had previously been represented

by counsel, that they had legal counsel in their negotiations with Prudential, that Jane went over this lease with their lawyer, and

Thus, we conclude that as a matter of law, in this case the constitutionally mandated presumption against a litigant's waiver of the constitutional right to trial by a jury was not rebutted. Bank of America did not meet its burden of producing prima facie evidence that Martin and Powell knowingly and voluntarily waived their constitutional right to trial by a jury. *See In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316. Accordingly, we sustain the Appellant's issue.[17]

## IV. CONCLUSION

Having held that Bank of America did not meet its burden to present prima facie evidence establishing that Martin and Powell knowingly, voluntarily, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences, waived their constitutional right to trial by a jury, and having sustained Appellant's issue, we reverse the trial court's order granting Bank of America's motion to enforce the contractual jury waiver. We remand this case to the trial court for further proceedings consistent with this opinion. *See* TEX.R.APP. P. 43.2(d).

LIVINGSTON, J. dissents with opinion.

## APPENDIX A

that they negotiated a number of changes with Prudential over a period of six months.
 *Based on these facts, . . .* [the] waiver of trial by jury was knowing and voluntary as a matter of law.
*In re Prudential*, 148 S.W.3d at 134 (emphasis added).

17. Having sustained Appellants' issue on this basis, we need not address Appellants' argument that, if the jury waiver in this case is enforceable, it nonetheless does not extend to all of Appellants' claims against Bank of America. *See* TEX.R.APP. P. 47.1 (requiring appellate court to address only issues necessary to final disposition of the appeal).

**Bank of America Mortgage**
## ADDENDUM TO CONTRACT

OUR LOAN #: 7010327934 Prop Address: 3325 MEADOWBROOK DR, FT. WORTH, TX 76103

1. Purchaser acknowledges that the Seller obtained the property by foreclosure or deed in lieu of foreclosure. The Contract of Sale is subject to each of the following condition: (i) final acquisition of property by Seller, (ii) the ability of Seller to clear title to the extent required in the Contract of Sale, (iii) the mortgage insurance company's approval of the sale, and (iv) if required by Seller, the re-purchase of the property by the prior mortgage servicer from Seller. In the event any of these conditions are applicable, at Seller's option and in Seller's sole discretion, then Seller may notify Purchaser that the Contract of Sale is canceled and the earnest money deposit shall be returned to Purchaser and Seller shall have no further obligation to sell or convey the property to Purchaser.

2. Purchaser accepts the property in its "AS IS, WHERE IS, AND WITH ALL FAULTS", condition at the time of closing, including any hidden defects, known or unknown. Purchaser acknowledges that neither Seller nor its agents have made any representations or warranties, limited or expressed, relating to the condition of the property. Seller and its agents shall not be responsible for the repair, replacement or modification of any deficiencies, malfunctions or mechanical defects in the materials, workmanship and mechanical components of the appurtenant structures and improvements prior or subsequent to closing. Items of personal property are not included in this sale. Seller makes no representation or warranty, express or implied, as to the condition of personal property, title to personal property or whether any personal property is encumbered by liens. Purchaser agrees that Seller shall have no liability for any claim or losses Purchaser or Purchaser's successors may incur as a result of any condition or other defect which may now or hereafter exist with respect to the property. The property has neither been inhabited nor inspected by the Seller.

3. Title Agent. Seller shall pay the premium for the standard owner's title insurance policy, and Seller shall also select the title agent issuing same. Buyer shall pay their customary closing fee plus the title examination fee to the closing/title agent. If Buyer obtains a mortgage loan in connection with this purchase, the mortgagee title policy premium will be paid by the Buyer. If Buyer selects the title agent to issue the mortgagee title insurance policy, then Buyer shall be obligated to pay all costs/fees associated with issuing the owner's title insurance policy.

4. Purchaser acknowledges that it is the Purchaser's sole responsibility and expense to obtain inspections of the property by qualified professionals to look for defects. Purchaser has a 10 day inspection period. In the event the inspection reveals material deficiencies, Purchaser may cancel the Contract of Sale with written notification together with the inspection reports and a written designation of the deficiencies. If Purchaser chooses not to make inspections, seller and seller's agent will be held harmless in the event of any mechanical failures or structural defects.

5. Purchaser agrees to indemnify Seller and fully protect, defend and hold seller, its agents, employees and contractors, harmless from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be sustained by or made against Seller or any damage to the property of any adjoining property, or any injury to Purchaser or any other person that may result from or arise out of inspections made by Purchaser or its agents, employees and contractors prior to closing.

6. Repairs by Seller. Seller's obligation to make repairs shall be limited to those repairs that it has agreed to make provided such agreement is in writing and is contained in the Contract or an addendum thereto. Except for the foregoing, Seller shall not be obligated for any repairs of any nature whatsoever.

7. If this sale is being financed, Purchaser shall have five (5) business days from the date of the Contract of Sale to make loan application, at which time points must be "locked in". The contract of Sale may be canceled by Seller in the event Purchaser is not "prequalified" within seven (7) business days from the date of the Contract of Sale.

8. Notwithstanding any other provision of the Contract of Sale (including, if applicable, any financing contingency), in no event shall the Contract of Sale be contingent upon the ability of the Purchaser to sell or close other real estate owned by the Purchaser.

9. Title will transfer with a Special or Limited Warranty Deed, Grant Deed, Cash Sale Deed, or Quit Claim Deed depending on the state where the property is located and the laws of title transfer in that state. All parties to the sale are to be made aware to allow ten (10) to fourteen (14) working days for the execution of the Deed.

Purchaser Initials _____ Seller Initials _____ Page 1

Bank of America Mortgage
## ADDENDUM TO CONTRACT

BANK OF AMERICA MORTGAGE #: 7010337834 Prop Address: 2325 MEADOWBROOK DR, FT. WORTH, TX
78103

10. Purchaser absolutely may not occupy the property nor make any repairs, prior to closing and funding. Purchaser shall be in default of the Contract of Sale in the event Purchaser occupies or alters the property or permits it to be a provision of the Contract of Sale.

11. **Termination of Contract.** In the event the Contract is terminated by Seller pursuant to any provision of the Contract, this First Addendum, or any other addendum, Seller's sole liability to Buyer will be to return Buyer's deposit, at which time the Contract shall cease and terminate and Seller and Buyer shall have not further obligations, liabilities or responsibilities to one another. Buyer agrees to release Seller from all liability associated with the contract for sale upon return of the deposit by Seller.

12. Buyer acknowledges that Seller acquired title to the subject property at a non-judicial foreclosure sale properly conducted at the request of Seller in connection with a previous loan made by Seller that defaulted resulting in said foreclosure sale. Buyer further acknowledges that Seller has not conducted any investigation, test or inspection of, and that Seller has no knowledge (actual, constructive or inquiry) of any lead-based paint or lead-based paint hazards at, on, in or about the Property. Any information made available to Buyer in connection with lead-based paint and lead-based paint hazards concerning the Property are made a part of this Escrow.

13. **Waiver of Trial by Jury.** Seller and Buyer knowingly and conclusively waive all rights to trial by jury in any action or proceeding relating to this Contract.

14. **Conflict.** In the event of a conflict between the Contract for Purchase and Sale and this Addendum, this Addendum shall govern. However, unless specifically amended herein, all of the terms and conditions of the Contract shall remain in full force and effect.

15. Seller makes no representations as to the property's compliance with any applicable building code or zoning ordinance. Any obligation of Seller to obtain a compliance certificate relating to the property (such as a certification relating to smoke detectors, certificate of occupancy, etc.) is assumed by the Buyer and shall not apply in the event the property is not in habitable condition, unless otherwise required by law. Therefore, it is understood between the parties that the Buyer is solely responsible, at the Buyer's own expense, to obtain a certificate of occupancy, smoke detector certificate, or any other certificate required by the state, county or the local municipality. Buyer will provide copies of any such certificate to Seller's attorney/closing agent prior to closing.

16. There may be multiple counter offers pending. Seller's signature on final accepted offer is deemed acceptance of that offer only.

17. This contract is NOT assignable.

18. There will be NO closings the last three (3) business days of the month. Closing to be 30 days from seller's last signature.

19. No real estate commission will be paid by seller to any real estate broker/agent, whether representing seller or buyer, where the Broker/agent or Broker's/agent's spouse is also the buyer.

20. The following information will be used in preparation of the conveyance deed. It is imperative that this information is accurate. Any change will require a $30.00 re-draft fee to be paid by Buyer.

### PLEASE PRINT THE FOLLOWING:

Vested Name Mikey's House, LLC

Tenancy Helen L. Maxen (i.e. single, joint, married sole owner, etc.)

The undersigned approve and accept this addendum and acknowledge this addendum to be a part of the Contract of Sale.

Date 3-18-03 Date 3/8/03
Purchaser Seller BANK OF AMERICA, N.A.
Purchaser By

JANELLE D. FOSTER
MORTGAGE OFFICER
AND ASST. SECRETARY

:5.5

TERRIE LIVINGSTON, Justice, dissenting.

I respectfully dissent to the majority opinion in several respects.

### No Starting Presumption Against Waiver

First, I question the applicability of a *presumption* against waiver in a case such as this, in which the parties entered into a contract containing a jury waiver provision. The case the majority cites for the proposition that every reasonable presumption against waiver should be indulged, *Aetna Insurance Co. v. Kennedy*, is a 1937 Supreme Court case dealing with whether a party could waive its Seventh Amendment right to a jury trial *by its*

*conduct* during trial. 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937) (holding that party did not waive right to trial by jury by requesting directed verdict); *see* U.S. CONST. amend. VII. The Seventh Amendment has not been extended to the states under the Fourteenth Amendment. *Minneapolis & St. Louis R.R. Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961 (1916); *Lucas v. U.S.,* 757 S.W.2d 687, 710 n. 10 (Tex. 1988) (Phillips, C.J., dissenting). So Aetna's "starting point" presumption against waiver applies only to cases litigated in the federal courts.[1] *See Bombolis,* 241 U.S. at 217, 36 S.Ct. at 596; Chester S. Chuang, *Assigning the Burden of Proof in Contractual Jury Waiver Challenges: How Valuable is Your Right to a Jury Trial?,* 10 EMP. RTS. & EMP. POL'Y J. 205, 208 (2006).

Should such a "starting point" presumption apply in cases tried in Texas state courts as advocated by the majority? There are no Texas cases imposing such a requirement. Indeed, in *Prudential* and *General Electric Capital Corp.,* our supreme court mentioned no such presumption, nor did it employ one. *In re Gen. Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex.2006) (orig.proceeding); *In re Prudential Ins. Co. of Am., Inc.,* 148 S.W.3d 124, 133–34 (Tex.2004) (orig.proceeding). And although the right to a jury trial is a fundamental right that is also included in the Texas constitution,[2] *Brosseau v. Ran-*

*zau,* 81 S.W.3d 381, 398 (Tex.App.-Beaumont 2002, pet. denied), Texas also strongly favors freedom of contract, enforcing contracts as written unless they are unconscionable or against public policy. *See* TEX. CONST. art. I, §§ 15, 16; *Prudential,* 148 S.W.3d at 129 & n. 11; *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex. 2001). Our supreme court has already determined that contractual jury waivers do not violate public policy and are not per se unconscionable. *Prudential,* 148 S.W.3d at 129–33.

In *Prudential,* the Texas Supreme Court observed that nearly every state court that had considered whether parties have the right to contractually waive a jury trial had held that parties may so agree. *Id.* at 132. In fact, the court specifically noted that the sole Texas intermediate appellate court that had addressed the issue had also concluded that parties have the right to contractually waive their right to a jury trial. *Id.* at 133 (citing *In re Wells Fargo Bank Min., N.A.,* 115 S.W.3d 600, 606–08 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding)). The supreme court clearly adopted the Houston Fourteenth Court's position in *Wells Fargo* as correct. *Id.* ("We believe this overwhelming weight of authority is correct."). The *Wells Fargo* opinion acknowledges the constitutional basis for jury trials, but further notes that "no Texas law

---

1. Although appellants' brief cites Texas constitutional provisions for the proposition that the right to a jury trial "has long been viewed as an important guarantee under" the Texas constitution, they never raised a Seventh Amendment challenge to the waiver here.

2. Although the right to a jury trial is broader under the Texas Constitution than the Seventh Amendment in terms of the types of causes of action it applies to (i.e., it protects "the right to trial by jury in those cases where a jury would have been proper at common law" or "where that right existed at the time

the Constitution was adopted"), *Lucas v. U.S.,* 757 S.W.2d 687, 710 (Tex.1988) (Phillips, C.J., dissenting) (quoting *State v. Credit Bureau of Laredo, Inc.,* 530 S.W.2d 288, 291 (Tex.1975)); *Trapnell v. Sysco Food Servs., Inc.,* 850 S.W.2d 529, 544 (Tex.App.-Corpus Christi 1992), *aff'd,* 890 S.W.2d 796 (Tex. 1994), that does not change my analysis as to the applicability of a presumption against a *contractual* jury waiver as evidenced by the supreme court's recent analysis in *General Electric* and *Prudential.*

prohibits parties from waiving that constitutional right—whether contractually or otherwise." 115 S.W.3d at 606.

Furthermore, our state's policy is to encourage all forms of alternative dispute resolution. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.002 (Vernon 2005); *Stephens v. Dallas Area Rapid Transit,* 50 S.W.3d 621, 628 (Tex.App.-Dallas 2001, pet. denied). Therefore, we should not apply a presumption against contractual waiver once it has been shown that the parties have entered into a contract that contains such a provision. Instead, I believe that when a contractual jury waiver exists, we should examine the record according to the factors and burden of proof discussed by our supreme court in *Prudential* and *General Electric,* which, although they appear to require us to construe such a provision narrowly, do not automatically employ a presumption in favor of or against such a waiver. *Gen. Elec. Capital Corp.,* 203 S.W.3d at 316;[3] *Prudential,* 148 S.W.3d at 133–34.

The majority also contends that a contractual jury waiver should be approached differently from an agreement to arbitrate because in Texas, there is a specific statutory presumption in favor of arbitration. TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon 2005). But in light of Texas's strong public policy of enforcing freedom of contract, it does not make sense to treat valid contractual jury waivers—which preserve many of the same rights to a litigant as a jury trial, most importantly access to the court system and its protections—differently from arbitration agreements, which preclude access to the courts altogether. *See Prudential,* 148 S.W.3d at 131–32; Brian D. Weber, Note, *Contractual Waivers of a Right to Jury Trial—Another Option,* 53 CLEV. STAT. L.REV. 717, 733–34 (2005–06). There is no presumption against the validity of arbitration agreements. Although arbitration is legislatively favored, practically, it makes little sense to treat a predispute contractual jury waiver (as opposed to a waiver by conduct) any differently than a predispute contractual agreement to arbitrate. *See Prudential,* 148 S.W.3d at 130.[4] In fact, *Prudential* takes that very position. *Id.* at 132. The court observed,

> [W]e think it preferable to enforce that agreement [to waive a jury trial] rather than leave [the parties] with arbitration as their only enforceable option. By agreeing to arbitration, parties waive not only their right to trial by jury but their right to appeal, whereas by agreeing to waive only the former right, they take advantage of the reduced expense and delay of a bench trial, avoid the expense of arbitration, and retain their right to appeal.

*Id.* And the *Wells Fargo* court likewise observed, "Although parties agreeing to arbitrate waive considerably more than just the right to a jury trial, arbitration is strongly favored under Texas law." 115 S.W.3d at 607. Thus, contrary to the majority, I would conclude that the lack of a statute specifically authorizing contractual waiver of jury trials does not support the

---

3. Indeed, the supreme court's holding in *General Electric,* that a conspicuous waiver provision is "prima facie evidence" of a knowing and voluntary waiver, militates against a conclusion that we indulge every reasonable presumption against waiver once it is shown that such a provision exists. *Gen. Elec. Capital Corp.,* 203 S.W.3d at 316.

4. *See also Wells Fargo,* 115 S.W.3d at 609 (analogizing to arbitration context in discussing burden of proof for contractual jury waivers); Weber, 53 CLEV. STAT. L.REV. at 741 (pointing out that waiver of jury only could hardly be considered as offensive as waiver of judicial process altogether).

majority's contention that there is a presumption against waiver.

For these reasons, I believe the majority opinion's "starting point" of a limited presumption against waiver is contrary to the limited precedent from our state supreme court. *See Gen. Elec. Capital Corp.*, 203 S.W.3d at 316; *Prudential*, 148 S.W.3d at 129–33.[5] Although the supreme court has never expressly said that it does not indulge every reasonable presumption against waiver in a contractual jury waiver context, it is clear that it has never applied such a presumption against jury waiver in this context.

### Appellants Conceded at Oral Argument That Bank of America Met Its Burden of Showing The Existence of a Valid Jury Waiver

Further, at oral argument, appellants' counsel stated that under *Wells Fargo*,[6] the initial burden was on Bank of America to establish that an agreement to waive a jury trial existed. Appellants' counsel also *conceded* that Bank of America had met this burden and that the burden was therefore on appellants to rebut the presumption of a valid jury waiver. *See, e.g., Gen. Elec. Capital Corp.*, 203 S.W.3d at 316 ("Such a conspicuous provision is pri-

ma facie evidence of a knowing and voluntary waiver and shifts the burden to the opposing party to rebut it.") (citing *Prudential*, 148 S.W.3d at 134, and *Wells Fargo*, 115 S.W.3d at 609). According to appellants' counsel, although the parties agreed that Bank of America had met its initial burden, there was a "whale of a disagreement" over whether appellants had met theirs.

On appeal, we continuously recognize parties' stipulations and arguments as to various matters, all in an effort to focus and narrow the appellate issues. I see no reason why we should not recognize the parties' stipulation at oral argument on this issue as well.[7] Thus, contrary to the majority opinion, I believe that my analysis not only correctly applies supreme court precedent, but also recognizes the parties' agreement and appellants' express concessions at oral argument. *See* Maj. Op. at 153 n. 11.

### Shifting Burden Analysis Under Controlling Supreme Court Precedent

Although I disagree about the applicability of a *presumption* against waiver here, it does appear from the supreme court's recent per curiam decision in *General*

---

5. As a lower court, we are bound by supreme court precedent. *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002); *Serv. Employment Redevelopment v. Fort Worth ISD*, 163 S.W.3d 142, 158 (Tex.App.-Fort Worth 2005, pet. filed).

6. The supreme court had not yet handed down *General Electric* when this case was argued; however, appellants' understanding of the parties' respective burdens is consistent with the supreme court's holding in that case.

7. Appellate counsel regularly make concessions during oral argument and in their briefs and we recognize these concessions. *See, e.g., In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex.2006) (orig.proceeding); *El Paso Natural Gas Co. v. Strayhorn*, 208

S.W.3d 676, 681 (Tex.App.-Texarkana 2006, no pet. h.); *Phoenix Network Techs. (Europe), Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 622–23 & n. 22 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Burlington Northern and Santa Fe Railway Co. v. City of Houston*, 171 S.W.3d 240, 251 nn. 4, 6, 11 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 755 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *see also* Tex. Const. art II, § 1; *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex.2004) ("A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution.").

*Electric* that the initial burden is on the proponent of a contractual waiver to introduce some evidence that the waiver was made knowingly, intelligently, and voluntarily. 203 S.W.3d at 316. Only once the opponent challenges the enforceability of a contractual agreement to waive a jury trial on some ground should the proponent be required to introduce some evidence rebutting the claimed deficiency. *Id.* at 316; *Wells Fargo,* 115 S.W.3d at 609.

In *General Electric,* the proponent met that initial burden by showing the words that were actually used in the written waiver and that the jury waiver provision was conspicuous. *Id.* The supreme court held that a contractual jury waiver provision that is conspicuous is "prima facie evidence of a knowing and voluntary waiver and shifts the burden to the opposing party to rebut it." [8] *Id.* (citing *Wells Fargo,* 115 S.W.3d at 609). Thus, under the supreme court's most recent opinion addressing this issue, it is clear that Bank of America's initial burden was to produce an agreement containing a conspicuous jury waiver provision that contained language indicating it was entered into knowingly and voluntarily—not to produce evidence *in addition to* such a provision that would prove the waiver was knowing and voluntary. *See id.*

In *Wells Fargo,* adopted by the supreme court in *General Electric,* the appellate court looked to the words used in the waiver—that they were given "knowingly and voluntarily" by the maker and guarantor—stating that the wording was "conclu-

sive" evidence of the knowing and voluntary nature of the waivers. 115 S.W.3d at 609. Accordingly, once the proponent shows some evidence of the validity of the waivers that rebuts the opponent's claimed deficiency, the burden shifts to the opponent to rebut this evidence. *Gen. Elec. Capital Corp.,* 203 S.W.3d at 316; *Prudential,* 148 S.W.3d at 134; *Wells Fargo,* 115 S.W.3d at 609.

Here, the waiver provision included in the Addendum clearly states, "Seller and Buyer *knowingly* and *conclusively* waive all rights to trial by jury ...." [Italics added.] If this language is conspicuous, it should be sufficient to at least be prima facie evidence of a knowing and voluntary waiver. *See Gen. Elec. Capital Corp.,* 203 S.W.3d at 316. But the majority concludes that, despite appellants' concessions, Bank of America did not meet its *initial* burden here because the jury waiver provision is not conspicuous and because Bank of America failed to produce any other prima facie evidence that the waiver was entered into knowingly, intelligently, and voluntarily.

## This Waiver is at Least as Conspicuous as the Waiver in *Prudential*

I believe that the waiver in this case is at least as conspicuous as the waiver in *Prudential* and is sufficient to shift the burden to appellants to show that the waiver was not made knowingly, intelligently, and voluntarily. [9] The clause at issue here reads as follows:

---

8. "A prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Lynn Smith Chevrolet–GEO, Inc. v. Tidwell,* 161 S.W.3d 738, 741 (Tex. App.-Fort Worth 2005, no pet.) (quoting *Rodriguez v. Printone Color Corp.,* 982 S.W.2d 69, 72 (Tex.App.-Houston [1st Dist.] 1998, pet. denied)).

9. I question whether it even matters in this case whether the provision was conspicuous or not. Martin testified that she did not recall reading the waiver. By signing a contract, a party is presumed to have read and understood its contents. *Prudential,* 148 S.W.3d at 134; *Town N. Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 492 (Tex.1978). In *Prudential,* the opponents "did not read the jury waiver,

**Waiver of Trial by Jury.** Seller and Buyer knowingly and conclusively <u>waive</u> all rights to <u>trial by jury</u> in any action or proceeding relating to this Contract.

The majority claims that it cannot tell whether the words **"Waiver of Trial by Jury"** are bolded;[10] however, it is plain to me from the copy in the record that those words are bolded because the font is objectively *darker* and *larger* than the font of the words in the rest of the sentence.[11] In addition, appellants set out the provision on page 3 of their brief, and although they failed to show the underlining of the words "waive" and "trial by jury," in the text, as correctly shown above, they did bold and underline the phrase **"Waiver of Trial by Jury."** Thus, the parties, who most likely have access to a better copy of the addendum than we do, agree that the term is bolded. *See* Dissenting Op., *supra,* at page 162 n. 7.

While the majority acknowledges that the title, **"Waiver of Trial by Jury"** is underlined, it gives no weight to this in its "conspicuousness" analysis. *See* Maj. Op. at 155 n. 15. However, only five of the twenty paragraphs in the two-page addendum have captions at all; all five of those captions are underlined. The document

that was considered by the trial court, as shown in the appellate record, shows that the caption of paragraph 13, the jury waiver paragraph, was underlined, and was one of only five paragraphs over two pages that contained an underlined caption. Because the appellate record provided to us is what we must use to determine appellants' issues, we must determine the conspicuousness of the provision based on the version of the addendum provided in the appellate record. *See Quorum Int'l v. Tarrant Appraisal Dist.,* 114 S.W.3d 568, 572 (Tex.App.-Fort Worth 2003, pet. denied) ("[W]e are bound to determine this case on the record as filed."). And absent any evidence to the contrary, we must presume that the version of the addendum as signed by the parties had those words underlined. *See id.*

In *Prudential,* only the caption of the jury waiver clause was bolded, and it was not underlined as was the clause here. 148 S.W.3d at 127, 134. Also, the jury waiver was in the "53rd paragraph of a 67-paragraph document, 7 pages before the signature page." *Id.* at 133.[12] That lease was fifty legal-sized pages long and had up to thirty lines per page and up to fifteen

were not told that it was included, and did not bargain for it." *Prudential,* 148 S.W.3d at 134. I do not see how a provision's conspicuousness is relevant when a party who admittedly does not remember reading a contract signed it anyway. A person should not be able to avoid the consequences of a contract that he or she voluntarily signed without reading it. In other words, here, voluntary ignorance should not excuse one from the consequences of a voluntary contract. However, I acknowledge that jury waiver analysis has moved away from the application of this basic contract principle to include a more detailed inquiry into the circumstances surrounding execution of the contract in which *the* waiver is included. *See* Chuang, 10 EMP. RTS. & EMP. POL'Y J. at 215.

10. The majority contends that even if the caption is bolded, it is not unique because other paragraphs on the page are introduced by similar looking captions. However, out of eleven paragraphs on the same page, only two other paragraphs contain any introductory caption at all, which differentiates those paragraphs from all others on the page; therefore, whether the caption of the jury waiver paragraph is bolded does not change my conclusion that the provision is conspicuous. *See* Maj. Op. at 17 n. 13.

11. E.g., the word "jury" in the caption of this paragraph is measurably larger than the word "jury" in the text of the paragraph.

12. Additionally, the caption was entitled "Jury Trial," rather than **"Waiver of Trial by Jury,"** as was the provision here.

words per line. Real Parties in Interest's Resp. to Pet. for Writ of Mandamus, No. 02–0690, 2002 WL 32349429, at *1 (filed Aug. 27, 2002). In determining that the waiver in *Prudential* was enforceable as a matter of law, the supreme court noted that the waiver was "crystal clear," was not printed in small type or hidden in other text, and was captioned in bold type. 148 S.W.3d at 134. It also observed that the opposing parties' claim that they did not read the provision did not affect the validity of the provision absent a claim that they were tricked into agreeing to it, which they did not make. *Id.*

I believe the provision here is at least as conspicuous as the waiver in *Prudential.* Here, the clause was on the second, signature[13] page of a *two-page* addendum that was not a standard TREC contract addendum. Although the majority considers this fact to be in appellants' favor, I believe that it is in Bank of America's favor. Certainly, the clause is more conspicuous even on the second page of a two-page addendum, as opposed to near the middle to end of a multi-page contract with only a bolded caption as introduction. Also, in the addendum here, not all of the paragraphs had introductory captions. As mentioned above, there were twenty paragraphs in the entire addendum, with only five containing numbered, underlined, and bolded captions, so that "[m]any" did not begin with a descriptive phrase, as claimed by the majority. Maj. Op. at 148. On the page containing the jury waiver provision, only three of eleven paragraphs contain such an introduction, and "waive" and "trial by jury" are the only words within a paragraph that are underlined.[14] And although the document is single spaced with-in paragraphs, it is double spaced between paragraphs.

I believe that the provision in this case was conspicuous precisely because it was captioned in the same way as *only four other provisions* that the drafter obviously chose to set apart from the other uncaptioned provisions in the addendum. Thus, it does stand out from the other uncaptioned paragraphs. Although the words within the provision are not in all caps, as was the provision in *General Electric*, that is not the only way to make a provision conspicuous. *See* TEX. BUS. & COM.CODE ANN. § 1.201(b)(10) ("Conspicuous," … means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.") & cmt. 10 ("Whether a term is conspicuous is an issue for the court. Subparagraphs (A) and (B) set out several methods for making a term conspicuous. … Although these paragraphs indicate some of the methods for making a term attention-calling, the test is whether attention can reasonably be expected to be called to it.") (Vernon Supp.2006). And as I have observed above, the part of appellants' brief containing this provision shows the caption bolded and underlined.

Therefore, I believe the provision here was at least as conspicuous as the provision described in *Prudential* and probably even more so due to the additional underlining of the words "jury" and "waiver." In any event, as in *Prudential,* there is no evidence that Bank of America attempted to conceal the provision from appellants in any way. Accordingly, I believe that Bank of America brought forward prima facie evidence that the waiver was made knowingly, voluntarily, and intelligently and that the burden then shifted to appellants

---

13. The signature block is at the bottom of the page, and the jury waiver provision is the fourth paragraph from the top of the page.

14. No entire sentences are underlined on the second page of the addendum.

to prove the contrary. *See Gen. Elec. Capital Corp.*, 203 S.W.3d at 316.

### Appellants' Evidence Does Not Rebut the Presumption That the Waiver Was Knowing, Intelligent, and Voluntary

I now turn to appellants' evidence that they claim proves that their execution of the waiver was not knowing, voluntary, and intelligent. Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex.1999); *Palladian Building Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 434 (Tex.App.-Fort Worth 2005, no pet.).

In *Prudential*, the supreme court held, based on undisputed facts, that the jury waiver in a lease was knowing, voluntary, intelligent, and made with sufficient awareness even though

- the bargaining power of Prudential, with "assets exceeding a quarter of a trillion dollars", greatly exceeded that of the Secchis [the appellants], "neither of whom were educated beyond the 8th grade, [and who] are immigrants to the United States who operate two local restaurants"; and

- the Secchis did not read the jury waiver, were not told that it was included, and did not bargain for it.

148 S.W.3d at 134. The supreme court noted that the Secchis had entered into commercial leases before, had been represented by counsel before, and were represented by counsel as to the lease with Prudential, which Jane Secchis went over with counsel and to which the Secchis had negotiated changes over a six-month period. *Id.* Thus, in addition to conspicuousness of the provision,[15] the supreme court considered the bargaining power of the parties, whether the parties were represented by counsel, the experience of the parties, and whether the Secchis had an opportunity to negotiate and examine the contract in which the provision was included. *Id.; see* Chuang, 10 EMP. RTS. & EMP. POL'Y J. at 215 & n. 57 ("[T]here is substantial agreement [among courts] regarding what kinds of information is relevant [in determining whether a contractual jury waiver was entered into knowingly, intelligently, and voluntarily.] Courts typically consider any actual negotiations over the clause, whether the clause was presented on a take-it-or-leave-it basis, the conspicuousness of the waiver, the degree of bargaining disparity between the parties, and the experience and sophistication of the party opposing the waiver."); Weber, 53 CLEV. STAT. L.REV. at 721.

Here, the evidence about the jury waiver is also undisputed; thus, whether the waiver is enforceable must be determined as a matter of law. *See El Paso Indep. Auto Dealers*, 1 S.W.3d at 111. I first note that both principals signed the waiver, Martin as President and Powell as Vice President. There is no evidence about *Powell's* knowledge and understanding of the waiver. Thus, appellants offered no evidence about whether Powell's execution of the addendum with the jury waiver included was knowing, intelligent, and voluntary. *See Poth v. Small, Craig & Werkenthin, L.L.P.*, 967 S.W.2d 511, 515 (Tex. App.-Austin 1998, pet. denied) ("Knowledge held by corporate officers or di-

---

**15.** Although in *Prudential* the supreme court declined to hold that a contractual jury waiver *must* be conspicuous, it nevertheless considered this factor and concluded that the provision in that case was conspicuous. *Id.*

rectors may be imputed to the corporation itself.").

Martin, who signed as president, testified that she did not recall reading the waiver, but that is not dispositive because she is charged with knowledge of the addendum's contents. *Prudential,* 148 S.W.3d at 134; *Broaddus,* 569 S.W.2d at 492. "We presume that 'a party who signs a contract knows its contents.'" *In re Bank One, N.A.,* No. 06–0093, 216 S.W.3d 825, 826 (Tex. 2007) (orig.proceeding) (quoting *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996)). Although Martin said that she did not understand the jury waiver provision, she agreed that she had been given an opportunity to review the addendum and could have reviewed it line for line if she had chosen to. She stated that Bank of America did not rush her into signing the addendum and that she could have retained counsel to review it if she had wished. It is undisputed that appellants did not attempt to negotiate the addendum despite the opportunity to do so.[16] *See* Weber, 53 CLEV. STAT. L.REV. at 726 ("Courts are more likely to enforce a jury waiver where the party who submitted to the jury waiver negotiated the provision *or voluntarily chose to forgo the opportunity to negotiate.*" (emphasis added)).

Although appellants were not represented by counsel, they were represented by a real estate agent, who presented them with the addendum from Bank of America. The majority contends that appellants' lack of counsel weighs in their favor. But Martin admitted that appellants could have hired counsel if they had chosen to do so, and Bank of America gave them an opportunity to review and negotiate the provision. What is important is that appellants were afforded such an opportunity and that they were not pressured to sign the addendum. Appellants should not benefit here from their choice to forego counsel.

The majority also contends, without explanation or citation of evidence from the record, that the bargaining power of the parties was unequal. Other than the fact that Bank of America produced the addendum and gave it to appellants' agent,[17] there is nothing in the record to indicate that Bank of America was in any appreciably better bargaining position than appellants.[18] In fact, by presenting the addendum to appellants after the sales contract had already been signed, Bank of America was in a worse bargaining position than appellants with respect to the addendum. Although the sales contract gave appellants a ten-day "free-look" period during which they could terminate the contract for any reason, it allowed Bank of America

16. The majority contends in several places that there is no evidence that either the sales contract or the addendum were negotiated. However, I note that although the sales contract is a standard TREC form, there is nothing in the record to indicate that the parties did not attempt to negotiate the discretionary provisions of that form, which in several places requires the parties to either check among several options or fill in blanks. Thus, I do not believe we can draw any conclusions from the record as to the extent the parties negotiated the sales contract (or not).

17. There is nothing in the record to indicate why Bank of America chose to present the addendum this way; however, I believe that this separate presentation of the addendum actually renders the jury waiver provision more conspicuous than it would have been otherwise.

18. Unlike *Prudential,* in which the supreme court noted that Prudential had "assets exceeding a quarter of a trillion dollars," there is no evidence in this record as to the size or holdings of Bank of America. Although I recognize that it is probably common knowledge that Bank of America is a sizeable corporation, there is no evidence that its size made any difference in this instance, nor is there any evidence as to its expertise in real estate sales.

to avoid its obligations to sell the property, without liability to appellants, only in the following circumstances: (1) by failing to cure any title objections made by appellants, (2) by refusing to agree to any lender-required repairs, and (3) by failing to make repairs in the event of a casualty loss to the property. So by the time Bank of America presented the addendum to appellants, it had the obligation to sell the property to them subject only to a few limited exceptions that were expressly conditioned upon specific occurrences; if Bank of America had attempted to terminate the sales contract for appellants' failure to sign the addendum or for attempting to negotiate the addendum in any way (including the jury waiver provision), Bank of America would have subjected itself to liability to appellants.[19] Thus, this factor does not weigh in appellants' favor either.

My review of the factors examined by the supreme court in *Prudential* and by other courts reviewing contractual jury waivers indicates that most of the factors here actually weigh in favor of enforcing the jury waiver: appellants' having the greater bargaining power as to the addendum (whether or not they perceived it), appellants' opportunity to negotiate the addendum whether they chose to or not, the lack of pressure on appellants to sign the addendum, and the conspicuousness of the provision. Although appellants were not represented by counsel as the Secchis in *Prudential* were, nor did they negotiate

the contract over six months as the Secchis in *Prudential* did, the record shows that appellants were not precluded from doing so and could have done so if they wanted. And the other facts of this case are similar enough to those in *Prudential* that I believe it is controlling here.

Based on the foregoing undisputed facts, I believe that the jury waiver here, and the circumstances under which it was signed, are substantially similar to the waiver and circumstances in *Prudential. See Prudential,* 148 S.W.3d at 134; *see also Gen. Elec. Capital Corp.,* 203 S.W.3d at 316; *Wells Fargo,* 115 S.W.3d at 609–10 (holding that jury waiver stating that it was made knowingly and voluntarily raised presumption of same and that burden was on party challenging enforceability of jury waiver to present evidence overcoming presumption). Thus, I would conclude that Bank of America presented prima facie evidence of a knowing, intelligent, and voluntary waiver, and that appellants did not meet their burden of proof to rebut that evidence.[20] I would conclude and hold that as a matter of law the jury waiver here was entered into knowingly, voluntarily, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences.

### Appellants' Claims Fall Within the Scope of the Waiver

Because I believe appellants did not meet their burden to rebut Bank of Amer-

---

**19.** On the signature page of the sales contract, there is a list of the documents that the parties intended to attach to the contract. The box marked "Other" is checked, with "Bank of America Mortgage Addendum to Contract" filled in. Thus, it appears that the parties contemplated attaching this agreement when the sales contract was signed. In any event, even if Bank of America had attempted to pressure appellants to sign the addendum because that box in the contract was checked, appellants, unlike Bank of America, could

have terminated the sales contract without losing their earnest money.

**20.** Moreover, I note that based on these undisputed facts and the similarity of this case to *Prudential,* I would hold that even if the burden of proof did not shift from Bank of America to appellants, based on the factors examined in *Prudential* and employed by other courts, Bank of America proved that the waiver here was entered into knowingly, intelligently, and voluntarily.

ica's prima facie evidence that the waiver was made knowingly, voluntarily, and intelligently—and, therefore, that the waiver is enforceable against appellants—I believe we should also determine whether the waiver extends to all of appellants' claims against Bank of America. Appellants contend that their fraud, DTPA, negligent or intentional misrepresentation, breach of warranties, and negligence causes of action "concern the representations that were made regarding the property being offered for sale, and go beyond issues 'relating to the contract.'" Appellants' extracontractual claims are premised upon their allegations that Bank of America misrepresented that it had good and merchantable title to the house at 3325 Meadowbrook and that it breached a duty to convey good and merchantable title to the property. In determining that the scope of the jury waiver at issue in *Prudential* extended to a fraudulent inducement claim, the supreme court followed the same rule it uses in the arbitration context and stated that as to that issue, it "agree[d] that the rule should be the same for all similar dispute resolution agreements." *Prudential*, 148 S.W.3d at 134–35. Thus, I believe that the supreme court would have us look to cases construing the scope of arbitration provisions in construing the scope of the contractual jury waiver language at issue here.

The interpretation of an unambiguous contract is a question of law. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999); *Heil v. Polar Corp.*, 191 S.W.3d 805, 809–10 (Tex. App.-Fort Worth 2006, pet. denied). Here, the jury waiver in the addendum purports to apply to "any action or proceeding relating to" the sales contract. In the arbitration context, this language is construed broadly, *In re Conseco Fin. Serv. Corp.*, 19 S.W.3d 562, 568 (Tex.App.-Waco 2000, orig. proceeding), to encom-

pass all claims at issue unless "it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995) (orig.proceeding). *Cf. Ex parte Cupps*, 782 So.2d 772, 775–76 (Ala.2000) (stating that under Alabama law scope of jury waiver should be construed narrowly and strictly but analogizing to cases construing arbitration clauses and acknowledging that clause applying to claims "arising out of or relating to" contract has a broader application than clause applying to claims "arising under" or "arising from" contract); *ST Sys. Corp. v. Md. Nat'l Bank*, 112 Md.App. 20, 684 A.2d 32, 34 (1996) (acknowledging that "[g]enerally, jury waiver provisions are strictly construed," but holding that interpretation of jury waiver should not be artificially limited and should instead be interpreted according to general contract construction rules); *Manderson & Assocs., Inc. v. Gore*, 193 Ga.App. 723, 389 S.E.2d 251, 257 (1989) (construing scope of jury waiver in accordance with general rules of contract interpretation).

Although here appellants' misrepresentation, DTPA, fraud, and negligence claims relate to some extent to matters occurring before formation of the contract, they are also directly related to the circumstances surrounding the execution and breach of the contract, and proof of those claims would necessarily require reference to and construction of the contract of sale and its breach. *See, e.g., Conseco*, 19 S.W.3d at 570; *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 391 (Tex.App.-Houston [14th Dist.] 1993, writ denied) ("To determine whether [a] particular tort claim is subject to arbitration, the court must determine whether [it] is so interwoven with the contract that it could not stand alone or, on the other

hand, is a tort completely independent of the contract and could be maintained without reference to the contract."); *see also Cupps,* 782 So.2d at 776 (citing holding in *Koullas v. Ramsey,* 683 So.2d 415, 418 (Ala.1996), that for dispute to be characterized as arising out of or relating to the subject matter of the contract, it must at very least raise some issue that requires reference to or construction of contract for its resolution).[21] Thus, I would conclude and hold that the trial court did not err by determining that the scope of the jury waiver encompassed all of appellants' claims against Bank of America.

For the reasons set forth above, I respectfully dissent to the majority opinion and would affirm the trial court's order.

---

**21.** Appellants contend that although the contract is related to the acts giving rise to the tort claims, those acts are not related to the contract because they occurred before its formation and breach. I believe that this is a distinction without a difference.