COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-381-CV

 

 

IN RE COLUMBIA MEDICAL CENTER                                          RELATOR

OF LEWISVILLE SUBSIDIARY,
L.P., 

D/B/A MEDICAL CENTER OF
LEWISVILLE

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  INTRODUCTION








The issue we address in this original proceeding
is whether the trial court abused its discretion by refusing to enforce a
prelitigation contractual jury waiver contained in a lease executed by Relator
Columbia Medical Center of Lewisville Subsidiary, L.P. d/b/a Medical Center of
Lewisville (Medical Center) and Real Party in Interest, CenterPlace Properties,
Ltd. (CenterPlace).  Because Medical
CenterCas the
party seeking to enforce the contractual jury waiverCmet its
evidentiary burden to rebut the presumption that the waiver was not knowingly
and voluntarily made and because CenterPlace did not offer any evidence that it
did not knowingly and voluntarily agree to the contractual jury waiver in the
lease, the trial court abused its discretion by refusing to enforce the waiver.  Accordingly, we will conditionally grant the
writ.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

CenterPlace is a Texas limited partnership that
owns property in Flower Mound and the buildings located on that property known
as CenterPlace I and CenterPlace II. 
Medical Center is a Texas limited partnership.  In November 2004, CenterPlace and Medical
Center executed a lease agreement.  The
parties represented at oral argument that the lease was AMedical
Center=s@ lease,
that is, that the lease was initially prepared by Medical Center.  Dr. Ganesh Harpavat, in his capacity as
President and General Partner of CenterPlace, signed the lease for CenterPlace
as landlord.  Howard K. Patterson, in his
capacity as Vice President of Medical Center, signed the lease for Medical
Center as tenant.  Dr. Harpavat initialed
six separate provisions of the nineteen-page lease and made six handwritten
revisions to the lease.  Section 24 of
the lease, appearing on page fourteen, is a jury waiver provision.  The provision is not bolded, not initialed by
the parties, and is not set forth any differently than any other section in the
lease.








Section 30 of the lease is titled ARight to
Lease Additional Space@ and notifies the ATenant,@ i.e.,
Medical Center, that its rights are Asubject
to and subordinate to superior option rights or rights of first refusal held by
the following tenants as of the Lease Date.@  The lease then lists eleven other tenants in
the CenterPlace II building and their corresponding suite numbers.

In February 2006, the parties began negotiating
an amended lease.  Copies of e-mails
exchanged by the parties and their attorneys appear in the record.  CenterPlace was represented by counsel during
the negotiations of the AFirst Amendment to Lease
Agreement.@ 
One e-mail from Dr. Harpavat expressly states that AI have
asked my attorney . . . to prepare the lease amendment papers.@  After approximately four months of
negotiations, the parties executed the AFirst
Amendment to Lease Agreement.@  The amendment contains a provision numbered
as 11, which is titled ARatification,@ and
provides that A[t]he Lease remains in full
force and effect as expressly modified by this Amendment, and is ratified and
confirmed.@








Subsequently, CenterPlace sued Medical Center,
asserting various causes of action arising from the parties=
dealings concerning the lease and the amended lease.  Eventually, CenterPlace filed a demand for a
jury trial.  Medical Center filed a
motion to quash CenterPlace=s jury
demand.  Medical Center filed an
affidavit and a supplemental affidavit in support of its motion to quash.  Numerous documents are attached to these
affidavits, including the lease, the amended lease, and e-mails between the
lawyers and the parties.  Over 300 pages
of documents were filed by Medical Center with the trial court prior to the
hearing on Medical Center=s motion to quash.

The trial court conducted a hearing on Medical
Center=s motion
to quash; neither side presented live testimony at the hearing.  Medical Center relied upon the documents
attached to the affidavits it filed in support of its motion to quash.  CenterPlace did not file a response or any
documents in response to Medical Center=s motion
to quash.  After the hearing, the trial
court signed an order denying Medical Center=s motion
to quash.  Medical Center then filed this
original proceeding.

                                     III.  STANDARD OF REVIEW

Mandamus relief is proper only to correct a clear
abuse of discretion when there is no adequate remedy by appeal.  In re Prudential Ins. Co. of Am., 148
S.W.3d 124, 135B36 (Tex. 2004) (orig.
proceeding).  A trial court clearly
abuses its discretion when it reaches a decision so arbitrary and unreasonable
as to amount to a clear and prejudicial error of law.  Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992) (orig. proceeding).








                                            IV.  THE LAW








The constitutional right to trial by jury may be
waived via contract so long as the waiver is made knowingly, voluntarily, and
intelligently with sufficient awareness of the relevant circumstances and
likely consequences.  See In re
Prudential, 148 S.W.3d at 132; Mikey=s Houses
L.L.C. v. Bank of Am. 232 S.W.3d 145, 149 (Tex. App.CFort
Worth 2007, no pet., [mand. pending]).[1]  We begin our analysis with a presumption
against the waiver of jury trial; the burden is on the party seeking to enforce
the prelitigation contractual jury waiver to rebut this presumption with prima
facie evidence that the waiver was knowingly and voluntarily made with full
awareness of the legal consequences.  Mikey=s
Houses, L.L.C., 232 S.W.3d at 152 (citing In re Prudential,
148 S.W.3d at 132B33 and In re Gen. Elec.
Capital Corp., 203 S.W.3d 314, 316 (Tex. 2006)).  Evidence of the following nonexclusive
factors may be considered in determining whether the party seeking to enforce a
contractual waiver of the right to a jury trial has rebutted the presumption
against the waiver by prima facie evidence that the waiver was knowingly and
voluntarily made:  (1) the parties=
experience in negotiating the particular type of contract signed; (2) whether
the parties were represented by counsel; (3) whether the waiving party=s
counsel had an opportunity to examine the agreement; (4) the parties=
negotiations concerning the entire agreement; (5) the parties=
negotiations concerning the waiver provision, if any; (6) the conspicuousness
of the provision; and (7) the relative bargaining power of the parties.  Id. at 153; accord In re Gen. Elec.
Capital Corp., 203 S.W.3d at 316 (examining conspicuousness); In re Prudential,
148 S.W.3d at 134 (examining several of the listed factors); RDO Fin. Servs.
Co. v. Powell, 191 F. Supp. 2d 811, 813B14 (N.D.
Tex. 2002) (examining several of the listed factors).

                           V.  APPLICATION OF THE LAW TO
THE FACTS













Here, the evidence presented to the trial court
by Medical Center concerning the above nonexclusive list of factors constitutes
prima facie evidence rebutting the presumption against the waiver of the
constitutional right to trial by jury and is some evidence that CenterPlace
made the waiver knowingly and voluntarily. 
The evidence presented by Medical Center shows that CenterPlace was
experienced in negotiating leases. 
CenterPlace was a landlord involved in leasing space in large commercial
buildings.  Section 30 of the lease
executed by the parties indicates that when CenterPlace executed the lease
containing the contractual jury waiver provision, it had already entered into
leases with at least eleven other tenants in the same building.  Although the record is silent as to whether
CenterPlace was represented by counsel when the original lease was executed,
the evidence conclusively establishes that CenterPlace was represented by
counsel when the AFirst Amendment to Lease
Agreement@ was negotiated and
executed.  Numerous provisions of the
original lease were modified by the amended lease, but the jury waiver
provision was not.  And the First
Amendment to Lease Agreement ratified the unmodified portions of the original
lease.  Consequently, before CenterPlace
entered into the lease amendment, counsel for CenterPlace did have the
opportunity to review the jury waiver provision and did have the opportunity to
make it part of the negotiations that occurred with respect to the amended
lease.  The parties=
negotiations concerning both the original lease and the lease amendment were
extensive.  The original lease contains
numerous handwritten interlineations made by Dr. Harpavat on behalf of
CenterPlace.  The lease amendment was
negotiated by CenterPlace=s counsel over a period of
approximately four months.  The record
contains no indication that the jury waiver provision was specifically
negotiated.  The jury waiver provision
set forth in section 24 of the original lease is not conspicuous.  It is set forth in the exact same manner as
each of the other thirty-eight sections of the lease.  The relative bargaining power of the parties
was fairly equal.  Both were Texas
limited partnerships.  They were entering
into a landlord-tenant relationship through a lease agreement.

Thus, Medical Center produced prima facie
evidence on five of the seven nonexclusive factors rebutting the presumption
against waiver of the constitutional right to trial by jury.  Weighing each of these factors, and viewing
the totality of the circumstances surrounding the transaction as reflected in
the record before us, Medical Center=s
evidence rebuts the presumption against the waiver.  The burden then shifted to CenterPlace to
produce evidence that its contractual waiver of its right to trial by jury was
not knowingly and voluntarily made.  In
re Gen. Elec. Capital Corp., 203 S.W.3d at 316; Mikey=s
Houses, L.L.C., 232 S.W.3d at 156.  CenterPlace offered no evidence at the
hearing and filed no affidavits or evidence with the trial court prior to the
hearing.








CenterPlace nonetheless contends that the facts
here are similar to the facts in Mikey=s
Houses, L.L.C. and compel the same result as Mikey=s
Houses, L.L.C.  In Mikey=s
Houses, L.L.C., this court, in a permissive interlocutory
appeal, held that the party seeking to enforce a contractual jury waiverCBank of
AmericaChad not
met its burden of rebutting the presumption against waiver of the
constitutional right to trial by jury.  See
Mikey=s Houses, L.L.C., 232
S.W.3d at 157.  The facts here, however,
are nothing like the facts in Mikey=s
Houses, L.L.C.








In Mikey=s
Houses, L.L.C., the contractual jury waiver provision was set
forth not in the sales contract executed between Mikey=s
Houses, L.L.C. and Bank of America, but in an addendum to the contract prepared
by Bank of America on a Bank of America form that was not a standard Texas Real
Estate Commission Form and that was presented to the two owners of Mikey=s Houses
L.L.C. after the sales contract had already been executed.  See id. at 147B48.  Here, the contractual jury waiver provision
was set forth in the primary lease executed by CenterPlace and Medical
Center.  Mikey=s
Houses, L.L.C. was a business formed by two ladies to buy foreclosed homes and
to renovate them for sale.  Id. at
147.  Here, CenterPlace was a much more
sophisticated business; CenterPlace owned property in Flower Mound and two
buildings located on that property known as CenterPlace I and CenterPlace
II.  In Mikey=s
Houses, L.L.C., one of its owners testified that she believed
the entire Bank of America addendum was just a typical Aas is@
provision, establishing that Mikey=s
Houses, L.L.C. purchased the house and the property Aas is.@  Id. at 154.  CenterPlace offered no explanation indicating
that it misunderstood the nature of the contract containing the jury waiver
provision.  Mikey=s
Houses, L.L.C. was not represented by an attorney at any time in its dealings
with Bank of America.  Id. at 154B55.  CenterPlace was represented by an attorney
during extensive negotiations for the lease amendment, and the lease amendment
ratified the entire prior lease, including the contractual jury waiver
provision.  Additionally, CenterPlace had
executed leases with at least eleven other tenants for space in its CenterPlace
II building prior to executing the lease with Medical Center for space in that
building.  No evidence existed that Mikey=s
Houses, L.L.C. had negotiated any aspect of its sales contract or the Bank of
America addendum containing the jury trial waiver.  Id. at 155.  Here, the original lease contains numerous
interlineations initialed by CenterPlace and Medical Center, and the record
contains correspondence relating to and red-lined versions of the lease
amendment, establishing that CenterPlace did negotiate both the lease and the
lease amendment.








In summary, the facts here do not compel the same
result as in Mikey=s
Houses, L.L.C.  Bank of
America in Mikey=s
Houses, L.L.C.Cas the party seeking to enforce
the contractual jury waiverCdid not
meet its burden to rebut the presumption that the waiver was not knowingly and
voluntarily made with prima facie evidence of a knowing and voluntary
waiver.  Id. at 156.  Here, Medical CenterCas the
party seeking to enforce the contractual jury waiverCdid meet
its burden to rebut the presumption that the waiver was not knowingly and voluntarily
made by introducing prima facie evidence that the waiver was knowing and
voluntarily made.  Consequently, the
burden shifted to CenterPlace to establish that the waiver was not made
knowingly and voluntarily.  See In re
Gen. Elec. Capital Corp., 203 S.W.3d at 316; Mikey=s
Houses, L.L.C., 232 S.W.3d at 153.  CenterPlace did not offer any evidence at the
hearing on Medical Center=s motion to quash the jury
demand and did not file any evidence for the trial court=s
consideration.  Accordingly, CenterPlace
did not meet the burden that shifted to it to establish that the waiver was not
made knowingly and voluntarily.

We hold that in this case the trial court abused
its discretion by failing to enforce the contractual jury waiver provision in
the lease executed by the parties. 
Additionally, because no right of appeal exists from the trial court=s ruling
denying Medical Center=s motion to quash CenterPlace=s jury
demand, Medical Center has no adequate remedy at law.  See In re Prudential, 148 S.W.3d at
135-36.








                                          VI.  CONCLUSION

Having determined that the trial court abused its
discretion by failing to grant Medical Center=s motion
to quash CenterPlace=s jury demand and having
determined that Medical Center possesses no adequate remedy at law, we
conditionally grant mandamus relief, order the trial court vacate its August 8,
2008 order denying Medical Center=s motion
to quash, remand this case to the trial court, and direct the trial court to
place it on the court=s nonjury docket.

 

 

SUE
WALKER

JUSTICE

 

PANEL: GARDNER and
WALKER, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED: January 8, 2009











[1]By way of explanation for
the unusual subsequent history citation for Mikey=s Houses, the parties in that
case perfected an interlocutory appeal to our court.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(d).  Although one justice dissented in Mikey=s Houses, Bank of America did not
file a petition for review with the Texas Supreme Court.  See Tex. Gov=t Code Ann. ' 22.225(c) (Vernon 2004
& Supp. 2008) (granting supreme court appellate jurisdiction over
interlocutory appeal when appellate court justice issues a dissent).  Instead, after this court issued its mandate,
Bank of America filed a mandamus with the Texas Supreme Court naming this court
as respondent and praying that the supreme court issue a mandamus directing
this court to Avacate and withdraw the
opinion and judgment@ entered in the
interlocutory appeal.  See In re Bank
of Am., N.A., No. 07-0901 (pet. for writ of mandamus filed Nov. 2, 2007,
courtesy copy served on Second Court of Appeals) (quoting language in prayer); see
also id., Brief in Support of Petition for Writ of Mandamus, at 33 (filed
Mar. 21, 2008), available at
http://www.supreme.courts.state.tx.us/ebriefs/07/

07090101.pdf (quoting same language
in prayer).  That petition for writ of
mandamus is pending in the Texas Supreme Court.